## CARSON, Respondent, v. QUINN, Appellant.

St Louis Court of Appeals, December 3, 1907.

1. **PRINCIPAL AND AGENT: Torts of Agent in Master's Service: Misfeasance and Nonfeasance.** For acts of positive wrong committed by an agent while engaged in the service of his master, both the agent and the principal are liable, but for mere negligence in non action, that is, nonfeasance as distinguished from misfeasance, the principal only is liable.

2. ————: ————: ————. Where an agent having charge of premises, belonging to his principal and leased to tenants, caused a hole to be made in a passage along which it was necessary for the tenants to go, and left it unguarded so that a tenant stepped into and was injured, this was a case of misfeasance rendering the agent liable as well as the principal.

3. PRACTICE: Variance: Parties. In an action for injuries to plaintiff caused by the negligence of the defendant in permitting the premises occupied by plaintiff to become unsafe, whereby the plaintiff was injured, the allegation of the petition was that the defendant was owner of the premises while the evidence showed that the defendant was the agent of the owner but liable because of his misfeasance. *Held*, this was not a failure of proof but a variance which was not material and also was not available to defendant for the reason that he did not comply with the provisions of section 655, Revised Statutes 1899.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse A. McDonald,* Judge.

AFFIRMED.

*Paul Dillon* for appellant.

(1) The acts complained of as constituting negligence on the part of defendant were his failure to cover, guard, light, fill up or otherwise protect said hole in said walk. Such act constitutes acts of nonfeasance and not acts of misfeasance, and an agent is not liable to a third party for his acts of nonfeasance. Harriman v. Stone, 57 Mo. 93; Lottman v. Barnett, 62 Mo. 159; Steulmer v. Sprul, 127 Mo. 552; Schmitt v. Rowse, 35 Mo. App. 288; Cooley on Torts (2 Ed.), p. 162; Smith on Negligence (1 Am. Ed.), 200. (2) Granting, for the sake of argument that the proof shows that defendant is liable for a direct positive wrong which we deny; in other words, that the defendant, as an agent, was guilty of misfeasance, still in this action plaintiff could not recover because there is a failure of proof of the cause of action pleaded. Chitty v. Railway, 148 Mo. 64; Briscoe v. Railway, 118 Mo. App. 668; Gressmore v. Railroad, 118 Mo. App. 387; McManamee v. Railway, 135 Mo. 440; Hesselbach v. St. Louis, 179 Mo. 524; Miller v. Clark, 78 Mo. App. 447; Yall v. Gillham, 187 Mo. 408; State v. Mysenburg, 171 Mo. 54.

*Morrow & Kelley* for respondent.

(1) But defendant was guilty of misfeasance—a positive wrong. He constructed this building and walk and rented the property to plaintiff's father and put her in it to be injured. It is as much a positive wrong as if he had negligently constructed a wall which had fallen on plaintiff. He had no right to put plaintiff in the flat and thus expose her to danger which was well known to him. Harriman v. Stowe, 57 Mo. 93; Lottman v. Barnett, 62 Mo. 168; Steinhauser v. Spraul, 114 Mo. 558; Martin v. Benoist, 20 Mo. App. 270; Baird v. Shipman, 132 Ill. 16, 7 L. R. A. 128; Osborn v. Morgan, 130 Mass. 102; Campbell v. Sugar Co., 62 Me. 552; Ellis v. Railway Co., 2 L. R. A. (N. S.) 378 and note; Mechem on Agency, sec. 572. (2) Quinn, as agent, had the managing of the affairs of this building generally; he had the whole construction of the walk, the renting of the premises and full possession and control of the court. He knew the hole was there and is liable regardless of the character of his act whether nonfeasance or misfeasance. It was negligence. Mayer v. Building Co., 104 Ala. 611; Stiewel v. Borman, 63 Ark. 30, 37 S. W. 404; Lough v. John Davis & Co., 30 Wash. 204, 59 L. R. A. 802. (3) There was no variance in the pleadings and the proof. The cause of action alleged and the one proved were the same, to-wit: the negligence of the defendant as alleged in the petition, not the ownership. R. S. 1899, sec. 656; Real Estate Co. v. Realty Co., 159 Mo. 567; Chouquette v. Electric Co., 152 Mo. 257.

BLAND, P. J.—The action was originally brought against three defendants, but was dismissed as to two of them, leaving James J. Quinn sole defendant. Omitting caption, the petition is as follows:

"Plaintiff states that defendants were, at all the times hereinafter mentioned, the owners of a certain

tenement house in the city of St. Louis, Missouri, known as No. 911 North Eleventh street in the rear. That said tenement house was divided off into flats or apartments to be rented to different tenants, each tenant renting and occupying exclusively a flat or suite of rooms and using in common a court or passageway in front of the flats or apartments on the first floor for ingress and egress and as a way to or from the closet or privy, which was at the north end of the court or passageway; the rooms or apartments alone being in the exclusive possession and use of the respective tenants; while the said court or passageway in front of the flat or apartments of said tenement house was in the possession and control of the defendants, the owners, and was not exclusively appurtenant to the flat or apartment of any one tenant, but was designed and used by all the tenants in common for ingress and egress and for a way to and from the closet or privy used in connection with said flats or apartments and to and from the suites or apartments respectively. That said walk or passageway at all times hereafter mentioned was in possession and control of the defendants. That the plaintiff's father, S. S. Hunt, rented from the defendants one of said flats or apartments of said tenement house situated on the first floor of the south end thereof, and that the plaintiff at the time of her injury hereinafter described, lived in it with him as a member of his family. That on the —— day of August, 1906, and about ten days prior to the plaintiff's injury, the defendants constructed a granitoid walk or pavement along and in said court or passageway in front of said tenement house and the flats or apartments thereof, and carelessly and negligently left a hole in the same about two and one-half feet long by two feet wide and ten inches deep, which rendered or made said walk or pavement unsafe and dangerous for persons traveling over said walk or pavement and that said walk or pavement remained in said unsafe and

dangerous condition for a long time and that the defendant carelessly and negligently neglected and failed to cover, guard, light, fill up or otherwise protect said hole in said walk or pavement, and negligently and carelessly permitted the same to remain open and in an unsafe and dangerous condition for persons traveling over the said walk or pavement up to September 9, 1906, and at the time plaintiff was injured as hereafter set out and that the defendants knew or by the exercise of ordinary care could have known of the unsafe and dangerous condition of said walk or pavement in time by the exercise of ordinary care to have covered, guarded, lighted, filled up or protected the same.

"That on the ninth day of September, 1906, the plaintiff while a member of the family of the said S. S. Hunt, her father, the tenant of the defendants aforesaid, and while traveling on said walk or pavement in said court or passageway going from said flat or apartment to the closet or privy in the rear, in the night time and while it was dark and without knowledge of said hole and dangerous condition of said walk or pavement, and while in the exercise of ordinary care for her own safety and without negligence on her part, stepped and fell and was precipitated into said hole in said walk or pavement and was thrown down on the hard granitoid walk and against the edge of the said hole and by reason thereof was seriously hurt and permanently injured in this:—

"At the time plaintiff was pregnant with a quick child about seven months old and plaintiff was hurt and bruised and injured in her abdomen, side and womb, the child's head was mashed and bruised and plaintiff was thereby caused to have a miscarriage and give premature birth to said child and said child, though born alive, died in a few hours after its birth of said injuries to its head, and the plaintiff was made sick and sore and caused to suffer great physical pain and mental anguish,

and her uterus permanently displaced and otherwise permanently injured and her health impaired by reason of which she will continue to suffer great physical pain and mental anguish in the future, and has been permanently disabled from making a living; to her damage in the sum of forty-five hundred ($4,500) dollars for which sum with costs of this suit plaintiff prays judgment against defendants."

The answer was a general denial.

Plaintiff's evidence tends to prove all the material allegations of the petition, except the allegation that James J. Quinn was the owner of the property described in the petition, and on which plaintiff fell and was injured. On the issue of ownership, the evidence shows the title of the property to be in one Joseph Byrne, defendant's brother-in-law, a single man who follows the races and who seems to have no fixed place of abode. Defendant testified he was the agent of Byrne, his brother-in-law, and had five thousand dollars of his money in his possession to invest for him and bought the property at a commissioner's sale as an investment for Byrne, paying in Byrne's five thousand dollars and six thousand dollars of his own money on the purchase price; that afterwards, on Byrne's approval, he borrowed fifteen thousand dollars on the property, reimbursed himself out of the loan for the six thousand dollars he had paid on the purchase price, and expended about seventy-five hundred dollars to improve the property; that he made all the contracts for the improvements, superintended the work and had exclusive possession and control of the property, and superintended and directed the improvements made upon it, as agent for Byrne.

The court described in the petition was common to all the tenants. The hole where plaintiff was hurt was about three feet square and ten inches deep and was made for a trap to a sewer. Granitoid was laid over the entire court, except the space occupied by the trap or

hole. This hole was in the path of the tenement occupied by plaintiff and her father to a closet in the yard and to a hydrant, the only place upon the premises where water could be obtained. Defendant had the hole dug and boxed and knew its dimensions and depth, and where it was located. Plaintiff's evidence tends to show the hole was open when she and her father moved into the tenement; that she had no knowledge of the existence of the hole until the night she stepped into it and was injured, she and her father having moved in the day before she was injured, under a contract with defendant to pay him six dollars per month rent. Defendant's evidence tends to show the hole had been filled up level with the granitoid surface several days before plaintiff and her father moved in. There is also some conflict in the medical testimony in regard to the cause and permanency of plaintiff's injuries.

Defendant, at the close of plaintiff's evidence and again at the close of all the evidence, offered an instruction in the nature of a demurrer to the evidence. Both requests were denied. The verdict was for plaintiff for $2,500. Defendant filed a timely motion for new trial which was overruled, whereupon the appeal was perfected.

For a reversal of the judgment, defendant assigns as error the giving of the following instruction for plaintiff:

"Although the jury believe from the evidence that the defendant James J. Quinn was not the owner of the premises and apartments at 911 North Eleventh street in question; yet if you should further believe from the evidence that he was the agent of Joseph Byrne, who was in fact the owner of the same, and that as such agent he had the charge, management, possession and control thereof, and that as such agent he rented one of said apartments to plaintiff's father, and that the plaintiff at the time of her injury, if you find she was injured,

was living in said apartment with her father as a member of his family; and if you further believe from the evidence that said Quinn as said agent constructed a granitoid walk or pavement along and in said court and passageway in front of said tenement house and negligently left a hole open in same which rendered or made said walk or pavement unsafe and dangerous for persons traveling over the same in the exercise of ordinary care by night, and that the defendant Quinn negligently failed to cover, guard, light, fill up, or otherwise protect said hole in said walk or pavement, and that the said Quinn negligently permitted said hole to remain open and in an unsafe and dangerous condition up to and including September 9, 1906, and that on said September 9, 1906, the plaintiff while traveling on said walk, or pavement in said court or passageway by night going from said flat or apartment to the closet or privy in the rear, by reason of such negligence on the part of said Quinn stepped, fell and was precipitated into said hole in said walk or pavement and thrown down or injured, then the jury must find for the plaintiff."

The points made on the instruction are, first, that it is erroneous in that it authorizes a recovery against defendant for acts of nonfeasance, whereas he, as agent of the owner, is only liable for acts of misfeasance; second, that it authorizes a recovery on a cause of action not stated in the petition.

1. On the doctrine of *respondeat superior* only the principal is liable to a third party for the mere nonaction of his agent or deputy; but for acts of positive wrong, both the agent and principal are liable to third parties. [Steinhauser v. Spraul, 127 Mo. 1. c. 552-3, 28 S. W. 620; 30 S. W. 102; and cases cited; Harriman et al. v. Stowe, 57 Mo. 93; Schmidt v. Rowse, 35 Mo. App. 1. c. 296; Whittaker's Smith on Negligence, 2 Am. Ed. 252.] Mechem says:

"The agent's primary duty is to his principal. To

him alone does he stand in the relation of privity and confidence. To him alone does he owe the performance of those duties which are implied from that relation, or which he has expressly assumed, and to him alone is the agent responsible for a failure to perform them.

"It is therefore the general rule that no action can be maintained by third persons against the agent to recover damages for any injury which they may have sustained by reason of the nonperformance or neglect of a duty which the agent owes to his principal." [Mechem on Agency, sec. 539.]

But the authorities all hold that the agent is liable to a third party for misfeasance and for acts of positive wrong. This is conceded by defendant. A difficulty often arises to determine under the facts and circumstances of the case, whether the act of the agent was misfeasance or mere nonfeasance. Plaintiff insists that the making of the hole in the court common to all the tenants occupying the premises and leaving it open, in the circumstances shown in the evidence, exposed the tenants to danger and was a positive wrong,—a misfeasance. Defendant, on the contrary, argues that the making of the hole was a necessary improvement, and leaving it open was a mere omission of duty, and therefore should be classed as nonfeasance. Mechem says: "Misfeasance may involve, also, to some extent the idea of not doing, as where the agent while engaged in the performance of his undertaking does not do something which it was his duty to do under the circumstances— does not take that precaution, does not exercise that care,—which due regard for the rights of others requires." [Mechem on Agency, sec. 572.]

Harriman v. Stowe, supra, is a case where the defendant, as agent for his wife, constructed a hatchway or trapdoor but did the work negligently and the plaintiff's wife was injured. The court, at page 99, said: "The present case seems to be one, not of mere non-

feasance or omission, but of strict negligence or wrong. The agent undertook and proceeded to build the trapdoor, but did it so negligently as to cause the injury; under such circumstances the action would be maintainable against the agent and the principal also." This case was approved in Lottman v. Barnett, 62 Mo. 159.

Baird v. Shipman, 132 Ill. 16, was a case where defendants, as agents for a non-resident house owner in Chicago, had complete control of the premises. A barn door on the premises, to the knowledge of defendants, was in a dangerous condition. An expressman while delivering a load of kindling wood in the barn for one of the tenants was killed by the door falling. The court held the agents were liable.

The distinction to be observed between mere nonfeasance and misfeasance, as applied to the liability of an agent to third persons, was considered in Osborne v. Morgan, 130 Mass., where at page 103, the court said: "It is often said in the books, that an agent is responsible to third persons for misfeasance only, and not for nonfeasance. And it is doubtless true that if an agent never does anything towards carrying out his contract with his principal, but wholly omits and neglects to do so, the principal is the only person who can maintain any action against him for the nonfeasance. But if the agent once actually undertakes and enters upon the execution of a particular work, it is his duty to use reasonable care in the manner of executing it, so as not to cause any injury to third persons which may be the natural consequence of his acts; and he cannot, by abandoning its execution midway and leaving things in a dangerous condition, exempt himself from liability to any person who suffers injury by reason of his having so left them without proper safeguards. This is not nonfeasance, or doing nothing; but it is misfeas-

ance, doing improperly." [See also Orcutt v. Century Bldg. Co., 201 Mo. l. c. 447.]

Defendant directed and superintended the construction of the hole or trap, had exclusive control of and supervision over the premises; and plaintiff's evidence tends to show he left the hole uncovered and thus exposed the tenants to danger. In these circumstances, the omission to cover the hole was not mere nonfeasance but a violation of the duty defendant owed the plaintiff and other tenants; it was a positive wrong for which he is liable.

2. The point that plaintiff was allowed to recover on a cause of action not stated in the petition, is equivalent to asserting that she failed to prove the cause of action stated in her petition. The statute, section 798, Revised Statutes 1899, provides: "Where the allegation of the cause of action or defense to which the proof is directed is unproved, not in some particular or particulars only, but in its entire scope and meaning, it shall not be deemed a case of variance, but a failure of proof." This section has no application where the action is unproven in some particular only, but where it is unproven "in its entire scope and meaning." [Litton v. Railroad, 111 Mo. App. 140, 85 S. W. 978.]

In Nelson v. Railroad, 113 Mo. App. JOHNSON, J., writing the opinion for the Kansas City Court of Appeals, at page 707, said:

"A plaintiff will not be permitted to declare upon one cause of action and recover upon another. When acts of negligence, fundamental to the right asserted, are specifically alleged, they must be proven as alleged. [Waldhier v. Railroad, 71 Mo. 514; Ely v. Railroad, 77 Mo. 34; McManamee v. Railway, 135 Mo. 440, 37 S. W. 119.] But this well-settled rule is in its application restricted by statute to predicative facts without proof of which the cause of action pleaded cannot be established, in its full scope and meaning, and not to facts that, par-

ticularizing only, may be eliminated without changing the cause of action. [R. S. 1899, secs. 655-798; Waldhier v. Railway, supra; Leslie v. Railroad, 88 Mo. 50; Ridenhour v. Railroad, 102 Mo. 270, 13 S. W. 889, 14 S. W. 760.]"

Plaintiff introduced evidence tending to prove every material allegation upon which her action was predicated, except the allegation that defendant was the owner of the premises. To supply this omission, the evidence tends to show that defendant, as agent of the owner, had the exclusive management and control of the premises, superintended the improvement thereof, and was himself liable for the injury inflicted on plaintiff, for the reason he was guilty of positive wrong in exposing her to the danger which resulted in her injury. There was, therefore, only a variance between the allegation that defendant was the owner of the premises and as such liable for the injury, and the proof that he was agent of the owner, and as such liable for the injury. This variance is a slight one and, it seems to us, an immaterial one. But if it was a material one, defendant did not take advantage of it by availing himself of the provisions of section 655, Revised Statutes 1899.

No reversible error appearing in the record, the judgment is affirmed. All concur.