## CHARLES WHITE, Respondent, v. MONTGOMERY WARD & COMPANY, Appellant.

Kansas City Court of Appeals, June 14, 1915.

1. NEGLIGENCE: Unloading Sugar: Runway: Deputy.   Two parallel car tracks entered defendant's house and a freight car stood on each.   One was filled with sugar in sacks which were loaded onto a four-wheeled truck; the truck was then pulled out of the car onto a runway which carried it over to the other car, thence it was pulled through that car onto another runway, carrying it to a dock where it was to be unloaded.   The end of the runway was negligently fastened inside the last car by another employee, and as plaintiff attempted to pull the truck through the car onto the runway, it slipped out of position and fell to the ground with plaintiff and the truck whereby he was injured.   *Held*, that it was the master's duty to see that the runway was reasonably safe, and though he deputized that duty to another employee, he was liable for the latter's negligence.

2. ————: Master: Deputy: Positive Duty.   A master who deputizes a servant to perform one of his positive duties to other servants, cannot escape liability for the deputy's negligence, no matter how low down in the scale of employment the latter may be.

Appeal from Jackson Circuit Court.—*Hon. Thos. J. Seehorn*, Judge.

AFFIRMED.

*Battle McCardle* and *F. L. Barry* for appellant.

*James B. Peck, F. M. Kennard* and *Wofford & Kimbrall* for respondent.

ELLISON, P. J.—Plaintiff was an employee of defendant and had his leg broken while engaged in unloading sugar from a car. He brought this action for damages and recovered judgment in the circuit court.

Defendant is a large mercantile establishment, engaged in business in a large building, into the lower floor of which spur tracks of a railway are laid, over which cars of merchandise are taken in and out of the building. Plaintiff was a laborer engaged in unloading sacks of sugar from a car. He was under the orders and direction of defendant's foreman in that department. As near as we can understand the situation, the car in which was the sugar was standing on one track; next was what is called a "dock," then a car standing on another track, then another dock on which the sugar was placed. The floors of the cars and the docks were about the same height above the ground and were connected by what are called "runways," perhaps four feet long. The sugar was loaded onto a four-wheel truck brought into the car. When the truck was loaded with a sufficient number of the sacks of sugar, plaintiff would take hold of a "tongue" or handle and pull it over the route to the dock where it was to be placed, being assisted by a man pushing from behind. The ends of these "runways" connecting the docks and the cars, were laid on the floor of the cars, extending into them a few inches. After the truck here involved, was loaded, plaintiff pulled it out of the car over the runway, across the dock, thence over another runway, through the other car, and as he attempted to pass out of the last car across a runway to the last dock, the end of the runway slipped from the car, or at least, slipped so much out of position as to cause it to fall, taking the truck of sugar and plaintiff down with it.

The negligence charged relates to the mode of fastening or securing the runway to the floor of the car. There was evidence tending to show that Brown, another employee, nailed a cleat to the floor against which the end of the runway rested and that holes were in the runway itself through which nails were partly driven into the floor. There was further evidence which tended to prove that the end of the runway was some higher than the floor of the car, and while it was secure for trucks coming into the car, it was not for cars going out by reason of the fact that the wheels of the loaded truck would strike it and sometimes throw it out of position.

The real question in the case, as it has been made and presented by defendant, is that the safety of these appliances and ways for unloading the sugar was in the hands of plaintiff and his fellow laborers. That defendant had placed at their disposal proper material and appliances for safely performing their work and if such appliances became unsafe it was the fault of the workmen and not the negligence of the employer. Thus if the end of the runway was not securely fastened to the car floor, it was the negligence of Brown, said to be plaintiff's fellow servant, or perhaps plaintiff's own fault, in not securing it himself.

There is a line of authority, notably in what is termed scaffolding cases, where it is held that if the owner furnishes lumber and material out of which a carpenter is to build scaffolds, and from which the carpenter can find suitable material, the owner is not liable for what may happen on account of the insecurity of the scaffolding. [Williams v. Ransom, 234 Mo. 55; Forbes v. Dunnavant, 198 Mo. 193; Bowen v. Ry. Co., 95 Mo. 268; Steffenson v. Roch. Co., 136 Mo. App. 225; Herbert v. Wiggins Ferry Co., 107 Mo. App. 287; Kelly v. Norcross, 121 Mass. 508; Killea v. Faxon, 125 Mass. 485.] Of course, the same rule will apply to other kind of work, as where simple duties are en-

trusted to the servant or a fellow servant (Modlagl v. Iron & Foundry Co., 248 Mo. 587) but the evidence in behalf of plaintiff does not place his case under such rule. The evidence tends to show that this work was being done under the orders and direction of a foreman representing the defendant. It was his duty to see that the place over which the work was being done, was reasonably safe; and the jury has said that he did not. This was one of the master's positive duties which, if he deputizes to another servant, must be performed by him. "For the law is that the master's duties to the servant cannot be laid aside by him, or put upon others in such way as to exculpate him when an injury happens by reason of their nonperformance. . . . It makes no difference how low down in the scale of employment a master may go to find a servant to deputize to perform for him a duty to the other servants. Whoever the master selects to act in his stead, becomes, as to that duty, the master himself. [Zellars v. Mo. Water Co., 92 Mo. App. 123, 124, 125.]

Nor is there ground for the claim that Brown, who, as we have stated, is said to have placed and secured the end of the runway in the car, was solely to blame and that his negligence was that of a fellow servant and gave plaintiff no cause of complaint against defendant, their common employer. Defendant cannot shift the duty to provide a safe place to work. [Zellars v. Mo. Water Co., 92 Mo. App. 123-127; Johnson v. Bolt & Nut Co., 172 Mo. App. 214, 219; Scheidler v. Iron Works, 172 Mo. App. 688, 694; Mullery v. Telephone Co., 180 Mo. App. 128.] And if we grant that Brown, ordinarily would have been regarded as a fellow servant and that he may have performed the manual labor in attempting to attach the end of the runway to the car, it counts for nothing. It is oftener than otherwise, that the employer does not, himself, perform the labor of fixing or constructing a place in or about which his employees are to work. It is his

duty to see that his servants who do the labor, do it properly. And it is said by our Supreme Court, and by this court, that when the master uses another servant in fixing or constructing a place in which other servants are to perform their duties, the former servant, while so engaged, is not a fellow servant. [Keorner v. St. Louis Car Co., 209 Mo. 141, 158; Zellars v. Mo. Water Co., 92 Mo. App. 123-127.]

We have examined the cases cited by defendant, but the foregoing discloses that we think them not applicable. We find no error at the trial and hence affirm the judgment. All concur.