# G. W. MITCHELL, Respondent, v. POLAR WAVE ICE & FUEL COMPANY, Appellant.

St. Louis Court of Appeals. Opinion Filed January 4, 1921.

1. **MASTER AND SERVANT: Injuries to Servant: Failure to Perform Delegated Duty: Negligence: No Recovery.** Where a master delegates to a servant the duty of keeping a place in a reasonably safe condition, the servant to whom this duty is delegated cannot recover for injuries received as a result of his failure or his negligence in doing so.

2. **————: Superior Servant Injured: Negligence: Master's Delegation of Duty to Inferior: Question for the Jury.** In an action for damages by the chief engineer at the plant where he received his injuries alleged to have been sustained by reason of an explosion of a tube in one of defendant's boilers, *held* that there was sufficient evidence to sustain the theory that defendant through its general superintendent had delegated to the operating engineers the power, authority and duty of seeing that the boilers were kept in a safe condition, so that other employees of the company who had occasion to perform services for it on the premises would be protected from the dangers arising as a result of defendant's negligence in permitting a boiler to become disabled and dangerous, as this one had been for almost two days, when it was under the direct supervision of defendant's operating engineers, whose duty it was to close this boiler down or cut it out under such circumstances, and there was substantial testimony from which the jury might have inferred that this duty was delegated to the day engineer, and the night engineer by defendant, and the action of the trial court was correct in refusing to declare, as a matter of law, that this duty had been delegated to plaintiff, but that it was a question to be submitted to the jury.

3. **————: ————: ————: Inferior Servant Performing Duty Delegated by Master: Liability.** Where a superior servant is injured due to the negligence of an inferior servant, he may recover, if the negligence of the inferior servant is with respect to the performance or non-performance of a positive duty which has been delegated to the inferior servant by the master.

Appeal from the Circuit Court of the City of St. Louis.— Hon. *Thomas C. Hennings*, Judge.

AFFIRMED.

*Holland, Rutledge & Lashly* for appellant.

(1)   The lower court erred in refusing to give the peremptory instruction offered by appellant at the close of all the testimony.   (a) Where, as in this case, the testimony shows that the master has placed the servant in complete control of a plant, and has delegated to him the duty of seeing that the same is kept in reasonably safe condition, such servant cannot recover for injuries sustained as a result of failure on his part to see that such plant is kept in such condition. 3 Labatt on Master & Servant, p. 1200; Britt v. Crebo, 199 S. W. 154; Sheilton v. Kirksville Light & Power Co., 258 Mo. 534; Kleine v. Freunds Sons Shoe & Clothing Co., 91 Mo. App. 102; Denker v. Wolff Milling Co., 135 Mo. App. 340; Bradley v. Tea & Coffee Co., 213 Mo. 320; Knorpp v. Wagner, 195 Mo. 637.   (b)   Where a superior servant, is injured by the negligence of an inferior servant, he cannot recover therefor against his master.   Minster v. Citizens Ry. Co., 53 Mo. App. 276; Evans v. Railroad, 62 Mo. 49; Gorham v. K. C. R. Co., 113 Mo. 408; Adair v. K. C. Terminal Ry. Co., 220 S. W. 920; Chicago & N. W. R. Co., 117 Ill. 376; Sible v. Wells Bros. Co., 148 Ill. App. 109; Moore v. Jones, 15 Tex. 391; Gulf C. & S. Tr. Co. v. Howard, 97 Tex. 513; Linck v. L. & N. R. Co., 107 Ky. 370; Edmonson v. Ky. C R. Co., 105 Ky. 479; Illinois Central Railroad v. Braslow, 94 Ill. App. 206; Lane v. Cent. Iowa R. Co., 69 Iowa, 443; Brunswick & W. R. Co. v. Smith, 97 Ga. 777; Birmingham Furnace & Mfg. Co. v. Gorse, 97 Ala. 220; Atlantic Coast Line Railroad v. Ryland, 50 Fla. 190 (2) (a) The lower court erred in refusing to give the peremptory instruction offered by appellant (defendant below) and refused by the court.   While the respondent (plaintiff below) in his petition alleged other grounds of negligence than that covered under heading supra; such other

grounds were abandoned by plaintiff at the trial because no instruction was asked by him in reference thereto. Masterson v. Transit Co., 204 Mo. 519; Johnson v. Railroad, 259 Mo. 551; Keele v. Railroad, 258 Mo. 62. (b) Moreover, even if this were not the case, the testimony showed that respondent had been placed in complete control of the plant in question and owed the duty to appellant of maintaining same in reasonably safe condition. See authorities cited under heading supra. (c) Moreover, there was no evidence in the case showing, or tending to show, any negligence on the part of appellant in reference to exits or condition of the floor. (d) Moreover, appellant was not an insurer and was under no obligation to provide against hazards that could arise only through the negligence of others. Brewing Assn. v. Talbot, 141 Mo.. 647; Goodrich v. Railroad, 152 Mo. 222; Meifert v. Sand Co., 124 Mo. App. 491. (3) The court erred in giving instruction No. 1 at the instance of respondent. This instruction is erroneous because it violates the following principles of law.: (a) Where a servant is placed by his master and is charged with the duty of keeping the plant in reasonably safe condition, he cannot recover for failure on his part to perform said duty. See authorities cited under heading (a) and (b) supra. (b) Where a superior servant is injured by the negligence of an inferior servant, he cannot recover from the master for such negligence of an inferior servant. See authorities under heading (b) supra. (4) The court erred in giving instruction No. 2 at the instance of plaintiff. (a) Said instruction is erroneous because it is broader than the pleadings and allows recovery for any negligence of the master, although respondent has limited himself by definite specifications of negligence. (b) Because said instruction overlooks the following principles of law: where a master places a servant in complete control of the plant and imposes upon him the duty of keeping same in reasonably safe condition, such servant cannot recover of the master for such

injuries for failure on his part to discharge said duty. See authorities cited under heading 1 (a), supra. Where a servant is injured by the negligence of an inferior servant he cannot recover from the master. See authorities cited under heading 1 (b), supra. (5) The court erred in giving instruction 9 at the instance of plaintiff. Said instruction is erroneous because it places the burden of proof upon appellant instead of upon plaintiff to establish the negative of a proposition the affirmative of which has to be established by respondent. (6) The court erred in not giving instruction D at the instance of appellant. Said instruction properly stated the law and should have been given for the following reasons: (a) Where a master places a servant in full control of a plant and charges him with the duty of keeping same in reasonably safe condition the servant cannot recover against the master for failure to discharge said duty. See authorities cited under heading 1 (a), supra. (b) Where a superior servant is injured by the negligence of an inferior servant he cannot recover therefor against the master. See authorities cited under heading 1 (b), supra. (7) The court erred in refusing to give instruction E at the instance of appellant. Said instruction correctly stated the law and should have been given for the following reasons: (a) Where a master places a servant in full control of a plant and charges him with the duty of keeping same in reasonably safe condition the servant cannot recover against the master for failure to discharge said duty. See authorities cited under heading 1 (a), supra. (b) Where a superior servant is injured by the negligence of an inferior servant he cannot recover therefor against the master. See authorities cited under heading 1 (b), supra. (8) The court erred in refusing to give instructions B and C at the instance of appellant for the reasons mentioned under heading 1, 2, 6, and 7, supra.

*Albert E. Hausman* for respondent.

(1) The duty of the master to furnish suitable appliances and keep them in repair is a continuing non-dele-

gable duty. Dutzi v. Geisel, 23 Mo. App. 676; Moore v. Wabash, 85 Mo. Sup. 588; 3 Labatt, Master and Servant (2 Ed), p. 2688; O'Neil v. Young, 58 Mo. App. 628; Huth v. Dohle, 76 Mo. App. 671; Pauck v. St. Louis Dressed Beef Co., 159 Mo. 467; Rodney v. St. L. S. W. Ry. Company, 127 Mo. 676; Zellars v. Mo. Water and Light Co., 92 Mo. App. 107, 124. (2) The servant to whom the duty of inspection or repair is delegated, whether he be of high or low degree becomes the master's *alter ego* and as to that duty he is not a fellow servant with any other employee. Zellars v. Mo. Water and Light Co., 92 Mo., App. 107, 124; Lewis v. Railroad, 59 Mo. 495; Harper v. Indianapolis & St. L. R. R., 47 Mo. 567; 4 Labatt (2 Ed), sec. 1496; Dutzi v. Geisel, 23 Mo. App. 683. (3) The duty to inspect or to keep in repair is owing by the master to a foreman or superintendent, just as it is to any other employee, unless that duty has been exclusively delegated by the master to such foreman or superintendent. Nichols v. Crystal Plate Glass Co., 126 Mo. 55; Daniels v. Goeke, 191 Mo. App. 1; Attix v. Minnesota Sandstone Co., 85 Minn. 142, 146; Oak Leaf Mill Co. v. Smith, 135 S. W. 333, 334; Viou v. Brooks, 99 Minn. 97; Hill v. Pacific, Etc., 22 Cal. App. 802-803; 3 Labatt, Master & Servant (2 Ed), page 2392, note 2. (4) A superior servant may recover for injuries caused by the negligence of an inferior servant to whom the master has delegated a non-delegable duty. Nichols v. Crystal Plate Glass Co., 126 Mo. 55; Coontz v. Railroad, 121 Mo. 652 and 656. (5) Where a non-delegable duty has been delegated to two servants to be performed by either, one injured by the negligent conduct of the other with respect to that duty, may recover. Zellars v. Mo. Water & Light Co., 92 Mo., App. 107; Merritt v. Great Northern R. R., 81 Minn. 496. (6) The primary duty of inspection of the boilers and the repair thereof was delegated by the master to the day operating engineer and the night operating engineer; it was not delegated to plaintiff. (5) The duty to inspect and repair rests primarily upon the master; if he has delegated that duty to the injured servant it is a matter of defense for him to prove. Hence, plaintiff's in-

struction No. 9 is correct.   Denker v. Wolff Milling Co.,
35 Mo. App. 340.   (8) Whether defendant had delegated
its primary duty of inspection and repair of the boilers to
plaintiff was an issue of fact, which was submitted to the
jury under proper instructions and by it decided adversely
to defendant.   That finding is conclusive here.   Coontz v.
Railroad, 121 Mo. 652, 656; Nicholds v. Plate Glass Co.,
126 Mo. 66.   (9) Defendant contends that plaintiff cannot
recover because he had failed to perform a duty delegated
to him.   Plaintiff and defendant submitted to the jury the
question whether defendant had delegated that duty to
plaintiff or to the operating engineers, and the jury found
that defendant had delegated it to the operating engineers.
That finding is conclusive here.   Nichols v. Crystal Plate
Glass Co., 126 Mo., 55; Adair v. Terminal, 220 S. W. 920.
(10) If a vice-principal is injured because of dangerous
conditions which it was his duty to provide against, there
can be no recovery; but this is on the ground of contrib-
utory negligence. 3 Labatt, Master & Servant (2 Ed.), par.
899, page 2393; Woelflen v. Lewiston-Clarkston Co., 49
Wash. 405, 95 Pac. 493.

NIPPER, C.—This is an action for damages alleged to
have been sustained by the plaintiff, by reason of an explo-
sion of a tube in one of defendant's boilers located at its
plant in the City of St. Louis.   The negligence alleged in
the petition and relied upon for recovery, is that the tube
which burst had been leaking for some two days, and the
defendant failed to discontinue the boiler, when it knew,
or by the exercise of ordinary care would have known, that
the said tube was in a defective condition and liable to
burst.   There were other acts of negligence alleged in the
petition, but they were abandoned by plaintiff and it will
be unnecessary to notice them in this opinion.

The answer was a general denial, and a further plea
that plaintiff, at the time he received his injuries, was in
full charge and control of the room and appliances men-
tioned in his petition, and charged with the duty of keep-
ing said room and appliances in a reasonably safe con-
dition; that plaintiff was chief engineer in charge of

this particular plant, and in full charge and control of all of the employees working therein, and that if any employee in said plant was guilty of negligence, such was by law imputed to plaintiff.

The reply was a general denial.

Plaintiff recovered and defendant appeals.

Objection is made to the giving of certain instructions for plaintiff, but as the objections urged to these instructions are made upon the theory that the court should have sustained a demurrer to the evidence, by disposing of the question of whether or not the court should have sustained such demurrer to the evidence, we necessarily dispose of the objections made to the instructions given for the plaintiff.

Defendant operates several plants in the city of St. Louis. The general offices of the company are located on Olive Street near Grand Avenue. These different plants were under the superintending control of one, Chamberlain, who is designated in the testimony as the General Superintendent. Plaintiff's title was Chief Engineer at the plant where he received his injuries. Although this was his title, there seems to be some conflicting testimony as to just what his duties were. He had been in the employ of the defendant company for several years. He had been chief engineer at this plant for perhaps something like two years prior to his injuries. For some few weeks prior to the date of the accident in question, he was working on the roof of this plant superintending the construction of some condensers. In a room on the ground floor, which room was described by some witnesses as being something like forty feet long and thirty feet wide, were located three large boilers, the one farthest east being known as No. 1, the next one toward the west being known as No. 2, and the next still farther west as No. 3.

The accident occurred on Tuesday, the 28th of March, 1916, about ten thirty A. M. Two men, Pfeil and Leahy, who were working under plaintiff's directions on the roof, had come down into the boiler room for the pur-

pose of heating a large pipe, and opened the side door of boiler No. 1, but discovering there was not enough heat there, they stepped around in front of this boiler. At about this time plaintiff came upon the scene, and noticed the leakage in this boiler, but before he had time to close it the explosion occurred. There being no question raised as to the amount of the verdict, it is unnecessary to set out in detail the injuries he received. There were two licensed engineers in immediate charge of these boilers, one, Roberts, who was known as the day engineer, and Strutman who was night engineer. Each worked twelve hours and each was employed by Chamberlain, the General Superintendent, who, at the time of employment, outlined their duties to them. Roberts had been day engineer for some time prior to the accident. Strutman had only been working for defendant about three nights before the accident happened. He testified that about one o'clock on the Sunday night prior to the accident, he discovered the leaking tube, and that when he returned to work on Monday night he noticed the tube was still leaking. The portion of his testimony with reference to that, we here set out:

"Q. Now, did you see Mr. Roberts that morning when you went off watch? A. Yes, sir

"Q. Tuesday morning? A. Yes, sir.

"Q. Did you speak to him about this tube? A. Yes, sir.

"Q. Tell us, as near as you can remember, what you said to Ed. Roberts? A. I said if they didn't have that boiler off when I came back I would not go in the boiler room.

"Q. Did he make any reply to indicate that he heard you when you said that? A. I made that remark two different times: which time do you mean?

"Q. Tell us about the first time and then the second time? A. The first time he said he didn't have the other boiler ready, that was Monday morning; that is the first time. He told me he didn't have the other boiler

ready. So Tuesday morning all he done then was throwed up his hands."

He also stated that it was the duty of the engineer on watch to take off the boilers when they were in that condition. He states also that the first time he saw plaintiff after he went to work at this plant, was in the City Hospital; that if he as night engineer or operating engineer found a leak, he was to report same to plaintiff or to Chamberlain. These were the instructions which he received from General Superintendent, Chamberlain.

It seems that plaintiff would spend a portion of his time at this plant and a portion at another plant known as the Broadway plant. One, Headen, who was working as fireman at the plant where the injury occurred, testified that he had also notified Roberts (under whom he was working), Monday morning that this tube was leaking. It appears that No. 3 boiler was not in use at that time and that they were preparing No. 3 for use so that No. 1 could be cut off.

Plaintiff testified that the Superintendent, Chamberlain, employed the night and day engineers, who in turn employed the firemen under them, and that plaintiff employed the pipe fitters; that Chamberlain not only employed the operating engineers, but discharged them when necessary, as was his duty; that it was the usage and custom in that plant for the engineer in charge to take the boiler off in case of a dangerous leak; that it was the duty of the operating engineer, made so by his general order of employment, to keep a watch on the boilers to determine their condition, and to detect leaking tubes; that he (plaintiff) was away from these plants from three to four weeks at a time.

Chamberlain, testifying for the defendant, stated that the operating engineer was in charge of the boilers, and that if a boiler was leaking it was his business to cut it out. In describing plaintiff's duties he says that in case a leakage was reported to plaintiff, he would decide as

to whether or not it should be cut out, but, in the absence of such notice, it was the duty of the day engineer.

Roberts testified that if the leakage was real dangerous, it was a part of his duty as operating engineer to cut out the boiler. He also stated, while testifying for defendant, that he had notified plaintiff of this leakage and asked him for instructions, but plaintiff denies this.

We will not set out all the testimony, for we are only concerned with the question of whether or not there was substantial testimony to sustain the verdict of the jury, or whether or not the court should declare plaintiff guilty of contributory negligence as a matter of law, on the theory that he was in direct control of the plant in question, and was charged with the duty of keeping the same in a reasonably safe condition.

Defendant contends: First, where the master has placed the servant in complete control of a plant and has delegated to him the duty of seeing that the same is kept in a reasonably safe condition, such servant cannot recover for the injuries sutained as a result of his failure to perform his duty. Second, where a superior servant is injured by the negligence of an inferior one, he cannot recover against the master. Defendant cites a number of cases to support each of the above contentions.

There is no question but that the rule of law is well established, that where a master delegates to a servant the duty of keeping a place in a reasonably safe condition, the servant to whom this duty is delegated cannot recover for injuries received as a result of his failure or his negligence in doing so. But we do not subscribe to the rule that a superior servant can never under any circumstances recover on account of the negligence of an inferior servant.

Among the cases cited by defendant to sustain the last-named contention, is Adair v. Kansas City Terminal Railway Co. (Mo.), 220 S. W. 920. This is a very recent case by our Supreme Court. But, if we understand the purport of this opinion, it does not sustain appellant's

contention. There the plaintiff was the foreman of a construction company engaged in the work of digging a ditch, and converting it into a permanent tunnel. When Drake, who was foreman of the carpenters who were doing the carpenter work on this tunnel, was removed to another portion of the work, and plaintiff was told to take charge of this work in addition to that which he was already performing, plaintiff stated that he was not familiar with that kind of work, whereupon a member of the firm of contractors told him that he would give him a man who was experienced and who could do the work. This man was placed in plaintiff's gang, and was in a general way under his control; but this man did not properly do the work which the master had delegated to him, and as a result plaintiff was injured. The court held that it was a question for the jury as to whether or not defendant had been negligent in furnishing him a safe place to work. In that case the plaintiff was injured by the neglect of an inferior servant, and one over whom he perhaps exercised control in a general way; yet the servant whose negligence was responsible for the injury had been delegated by the master as his representative to do that particular work. He was not employed by the plaintiff, but by the master. We quote from that case, l. c. 927, as follows:

"The plaintiff insists that in this respect Russell was selected by them as the *alter ego* upon whom that duty devolved, while the defendants say that he was only a co-employee recommended and furnished by the defendants to work under the direction of the plaintiff in the performance of his duty."

The court stated that defendants' proposition did not recommend itself, holding that the servant Russell's work, with respect to the carpenter work on the job, was the master's work, because he had been placed there by the master for that purpose.

We think there is sufficient evidence in this case to sustain the theory that the defendant, Polar Wave Ice &

Fuel Company, through its General Superintendent, Chamberlain, had delegated to the operating engineers, the power, authority, and duty of seeing that these boilers were kept in a safe condition, so that those other employees of the company who had occasion to perform services for it on these premises, would be protected from the dangers arising as a result of defendant's negligence in permitting a boiler to become disabled and dangerous, as this one had been for almost two days, when it was under the direct supervision of defendant's operating engineers, whose duty it was, according to Chamberlain's testimony, to close this boiler down or cut it out under such circumstances. And there was substantial testimony from which the jury might have inferred that this duty was delegated to the day engineer, Roberts, and the night engineer, Strutman, by the defendant, who hired them, instructed them, and discharged them if necessary, through and by its superintendent and not plaintiff.

We think the action of the trial court was correct in refusing to declare as a matter of law, that this duty had been delegated to plaintiff, but that it was a question to be submitted to the jury, which was done under proper instructions. [Zellars v. Missouri Water & Light Co., 92 Mo. App. 107; Nicholds v. Crystal Plate Glass Co., 126 Mo. 55, 28 S. W. 991.]

Appellant insists that where a superior servant is injured, due to the negligence of an inferior servant, the superior servant cannot recover as against the master because he is responsible for the acts of the inferior; but there are exceptions to this general rule, and one of them is, that if the superior servant is injured due to the negligence of the inferior servant, he may recover, if the negligence of the inferior is with respect to the performance or non-performance of a positive duty which has been delegated to the inferior servant by the master. It makes no difference at what point in the scale of employment a master goes to find a servant to perform for

him a particular duty to other servants, for when the master selects that servant to act for him in the performance of that duty, then such servant becomes the master's *alter ego* as to that particular duty. [White v. Montgomery Ward & Co., 191 Mo. App. 268, 177 S. W. 1089; Zellars v. Missouri Water & Light Co., supra.]

Finding no reversible error in the record, the Commissioner recommends that the judgment be affirmed.

PER CURIAM:—The foregoing opinion of NIPPER, C., is adopted as the opinion of the court. The judgment of the circuit Court is accordingly affirmed. *Reynolds, P. J., Allen* and *Becker, JJ.,* concur.