STATE of Missouri ex rel. Frank BADAMI and Charles Lang, Relators,

v.

The Hon. Carl R. GAERTNER, Judge of Division No. 1 of the Circuit Court of the City of St. Louis, State of Missouri, Respondent.

No. 42415.

Missouri Court of Appeals,
Eastern District,
En Banc.

Jan. 19, 1982.

Motion for Rehearing or to Transfer to Supreme Court Denied Feb. 19, 1982.
Application to Transfer Denied
March 16, 1982.

Kohn, Shands, Elbert, Gianoulakis & Giljum by Thomas J. Frawley, St. Louis, for relators.

Frank B. Green, St. Louis, for respondent.

SATZ, Judge.

Relators sought our writ of prohibition to prevent respondent from proceeding further in the underlying lawsuit, *Lott v. Badami* and *Lang*. In division, we issued our preliminary writ and, subsequently, made that writ permanent. Respondent's motion for rehearing was granted and, after briefing and oral argument, we again make the writ absolute. In so doing, we adopt, without quotation marks, those portions of the divisional opinion which reflect our present consensus.

In the *Lott* case, plaintiff seeks to recover against defendants for severe injuries sustained during his employment by Mid-America Fiber Company. Plaintiff's hand was injured when drawn into a shredding machine and he was required to undergo surgical amputation of three fingers. Defendant Badami is the corporate president of Mid-America; defendant Lang is the production manager of the company. Plaintiff received benefits under the workmen's compensation law, Chapter 287 RSMo 1978. In the underlying suit, plaintiff seeks to recover from defendants for negligence from their alleged failure to equip the shredding machine with certain safety devices which would have prevented plaintiff's injury. It was alleged that Mid-America had delegated to each of the defendants the duty of providing their fellow employees with a reasonably safe place to work and that each of the defendants were thereby responsible for "the detection, correction and prevention of work practices and working conditions which would render

the plant not reasonably safe for workmen ...." It was further alleged that defendants "knew or in the exercise of ordinary care could have known" of the danger of the shredding machine and the absence of adequate safety devices thereon. Defendants moved to dismiss the petition for failure to state a claim and for lack of jurisdiction over the subject matter. The latter motion was based upon immunity under the workmen's compensation law. The respondent Judge indicated his intention to overrule the motions and stayed the effect of that order to allow relators to seek a writ of prohibition. As previously indicated, we issued our preliminary writ to prevent respondent from exercising jurisdiction. Thereafter both parties filed affidavits and respondent filed exhibits. These documents are not a part of the record in the court below and are ordered stricken. *State ex rel. Terry v. Holtkamp*, 330 Mo. 608, 51 S.W.2d 13, 16 (banc 1932).

The question we are confronted with is whether a supervisory employee, including a corporate officer, may be held personally liable for injuries sustained by a fellow employee covered by workmen's compensation where the injuries occur because of the supervisor's failure to perform the duty, assigned to him by the employer, to provide the fellow employee a reasonably safe place to work. The question has never been decided in this state and has been answered in differing ways in other states.

Section 287.120 RSMo 1978 provides in pertinent part:

"1. Every employer subject to the provisions of this chapter shall be liable, irrespective of negligence, to furnish compensation under the provisions of this chapter for personal injury or death of the employee by accident arising out of and in the course of his employment, and shall be released from all other liability therefor whatsoever, whether to the employee or any other person ...

2. The rights and remedies herein granted to an employee shall exclude all other rights and remedies of the employee ... at common law or otherwise, on

account of such accidental injury or death, except such rights and remedies as are not provided for by this chapter."

Section 287.150 RSMo 1978 provides that "[w]here a third person is liable to the employee or to the dependents, for the injury or death, the employer shall be subrogated to the right of the employee . . . against such third person. . . ."

█ It is accepted in this state that a co-employee, or fellow servant or foreman is a "third person" within the meaning of Sec. 287.150 and that he may be sued by an injured co-employee for his negligence resulting in the compensable injury. *Schumacher v. Leslie*, 360 Mo. 1238, 232 S.W.2d 913 (banc 1950); *Gardner v. Stout*, 342 Mo. 1206, 119 S.W.2d 790 (1938); *Lamar v. Ford Motor Co.*, 409 S.W.2d 100 (Mo.1966); *Sylcox v. National Lead Co.*, 225 Mo.App. 543, 38 S.W.2d 497 (1931). "Employee" includes executive officers of corporations. Sec. 287.020 RSMo 1978. Neither party here questions these principles of law. The question is how far do they reach?

Before examining the law of foreign jurisdictions, we believe it important to look to the state of the law when the Workmen's Compensation Act was enacted in Missouri in 1926. Prior to that the employer was not liable for injuries caused to an employee by the negligent acts of a "fellow servant." *Bender v. Kroger Grocery & Baking Co.*, 310 Mo. 488, 276 S.W. 405, 406 (1925). Perhaps to obviate the harshness of such a rule, it was recognized that a co-employee may function in a dual capacity—as a fellow servant or as a "vice-principal" for the master. In the latter position his negligence was not that of a fellow servant but rather was the negligence of the master himself. Additionally, the courts held that the duty of the master to provide a reasonably safe place to work for the employee was a non-delegable duty. *Bender v. Kroger Grocery & Baking Co., supra*, [2]. When, therefore, the master utilized an employee to perform this non-delegable duty that employee was not functioning as a fellow servant but as the master himself. Upon failure of that employee to perform the duty, liability at-

tached to the master for injuries to third parties or other employees. *Mitchell v. Polar Wave Ice & Fuel Co.*, 206 Mo.App. 271, 227 S.W. 266 (1921); *White v. Montgomery Ward & Co.*, 191 Mo.App. 268, 177 S.W. 1089 (1915); *Zellars v. Missouri Water & Light Co.*, 92 Mo.App. 107 (1902).

Parallel to this principle was the principle that an agent was liable to third persons, including co-employees, only for his misfeasance but not for his nonfeasance. *See McGinnis v. Chicago R.I. & P.Ry.Co.*, 200 Mo. 347, 98 S.W. 590, 592 (1906); *Jewell v. Kansas City Bolt & Nut Co.*, 231 Mo. 176, 132 S.W. 703, 711 (1910). This principle was based on the premise that tort liability for breach of contractual obligations should be restricted to those in privity with the promisor. *See Harriman v. Stowe*, 57 Mo. 93, 98 (1874). Since no privity existed between the agent and the third person, the agent's failure to perform a contractual duty owed to his principal, i.e., his nonfeasance, would result in the agent's being liable only to his principal. *Id.* at 98; *see Carson v. Quinn*, 127 Mo.App. 525, 105 S.W. 1088, 1090–91 (1907). In Missouri, our courts clearly recognized this distinction between an agent's nonfeasance and his misfeasance. *See Hamm v. Chicago, B. & Q.R.Co.*, 211 Mo. App. 460, 245 S.W. 1109, 1113 (1922); *McCarver v. St. Joseph Lead Co.*, 216 Mo. App. 370, 268 S.W. 687, 690 (1925). Although, application of this distinction was imprecise at times, misfeasance was found only after the agent had "entered upon" the performance of his duty, *e.g., Orcutt v. Century Bldg., Co.*, 201 Mo. 424, 99 S.W. 1062, 1067 (1906) and mere passive acceptance of the duty was not the beginning of performance; rather, an agent "entered upon" the performance of his duty only after he had committed an affirmative act in furtherance of that duty. *See McCarver v. St. Joseph Lead Co.*, 216 Mo.App. 370, 268 S.W. 687 (1925); *see also Jewell v. Kansas City Bolt & Nut Co.*, 231 Mo. 176, 132 S.W. 703 (1910). *But see, State ex rel. Hancock v. Falkenhainer*, 316 Mo. 651, 291 S.W. 466, 468 (banc 1927) (defendant's failure to warn of intention to start machinery was misfeasance).

Thus, under the law as it existed at the time of the enactment of our workmen's compensation law, the duty to provide a safe place to work was upon the employer, not the employee. An employee chosen to implement this duty owed his duty to the employer and he incurred no personal liability for failure to fulfill his duty to provide a reasonably safe place for employees to work.

Arguably, this nonfeasance-misfeasance distinction permitted the primary wrongdoer to escape liability merely because his negligence was passive. Under criticism, the distinction was blurred and, perhaps, effectively eliminated by our courts as a viable concept in agency and tort law. *See, e.g., Giles v. Moundridge Milling Co.,* 351 Mo. 568, 173 S.W.2d 745, 751–752 (1943); *Lambert v. Jones,* 339 Mo. 677, 98 S.W.2d 752, 757–759 (1936). The distinction apparently was rejected by the Restatement (Second) of Agency, *see Restatement (Second) of Agency* § 354;[1] *see also* §§ 350–359, and, although, acknowledged, was criticized by the Restatement (Second) of Torts. *See Restatement (Second) of*

*Torts* § 323.[2] This blurring and elimination of the distinction developed in agency and tort law independent of our compensation legislation. Our question here is whether we should fix our compensation legislation with this independently developed conceptual change.

In *Sylcox v. National Lead Co.,* 225 Mo. App. 543, 38 S.W.2d 497 (1931), we first recognized the liability of a co-employee to a fellow employee as a "third person" under the workmen's compensation law. In so doing, we applied the principles of law first noted and explicitly stated: "Now there is no doubt that at common law one servant is liable to another for his own *misfeasance,* and there is nothing in the Compensation Act which destroys such liability, *or in any way disturbs the common law relationship existing between co-employees.*" (Emphasis supplied). *Id.* 38 S.W.2d at 502. We cannot regard the use of the term "misfeasance" as inadvertent given the distinctions between "misfeasance" and "nonfeasance" in the law of that time, particularly as it related to fellow servants. On its facts,

1. Section 354 provides:
   "An agent who, by promise or otherwise, undertakes to act for his principal under such circumstances that some action is necessary for the protection of the person or tangible things of another, is subject to liability to the other for physical harm to him or to his things caused by the reliance of the principal or of the other upon his undertaking and his subsequent unexcused failure to act, if such failure creates an unreasonable risk of harm to him and the agent should so realize. Caveat:
   If the agent has not entered upon performance, it is not clear that liability will result from the agent's subsequent failure of performance."

2. Section 323 provides:
   "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
   (a) his failure to exercise such care increases the risk of such harm, or
   (b) the harm is suffered because of the other's reliance upon the undertaking. Caveat:

The Institute expresses no opinion as to whether:
(1) the making of a contract, or a gratuitous promise, without in any way entering upon performance, is a sufficient undertaking to result in liability under the rule stated in this Section,

.    .    .    .    .

Comment on Caveat:
d. *Promise as an undertaking.* The Caveat leaves open the question whether a mere promise, without in any way entering upon performance, is an undertaking sufficient to make the promisor liable under the rule stated in this Section.

.    .    .    .    .

There is no essential reason why the breach of a promise which has induced reliance and so caused harm should not be actionable in tort. This is true particularly where the harm is physical harm, to the person, land, or chattels of the plaintiff. The technicalities to which the courts have resorted in finding some commencement of performance indicate a development of the law toward such liability. In the absence of sufficient decisions, however, the question is left open."

*Sylcox* simply articulated the rule that an employee becomes liable to a fellow employee when he breaches a common law duty owed to the fellow employee independent of any master-servant or agent-principal relation.

The subsequent cases in Missouri which likewise held that an employee does not obtain employer immunity under the Workmen's Compensation Act all involve circumstances in which the act of the defendant employee was in breach of a duty which he owed without regard to whether he was an employee or an agent. *Schumacher v. Leslie, supra,* (malpractice by doctor selected by employer aggravated plaintiff's work-related injury); *Gardner v. Stout, supra,* and *Lamar v. Ford Motor Co., supra,* (assaults by defendant fellow workers on plaintiff employees). On their facts, these cases worked no changes in our compensation law.

We now turn to the foreign law. At least three, and possibly more, approaches have been taken to the precise question before us. To an extent these results may be based upon differences in the wording of the workmen's compensation statutes involved. But even considering that feature there still exists a pronounced split between the jurisdictions. The first approach is that typified by *Warner v. Leder,* 234 N.C. 727, 69 S.E.2d 6 (1952); *Madison v. Pierce,* 156 Mont. 209, 478 P.2d 860 (1970); *Witherspoon v. Salm,* 251 Ind. 575, 243 N.E.2d 876 (1969); and *Brown v. Estess,* 374 So.2d 241 (Miss.1979) which hold that the immunity granted the employer under the workmen's compensation law also applies to employees whose negligence caused the injury regardless of the nature of that negligence. That approach is clearly contrary to Missouri law.

The second approach is that which has been most frequently expounded by the Wisconsin courts. There it is held that a corporate officer or supervisory employee performs in a dual capacity. He has immunity under the workmen's compensation law where his negligence is based upon a general non-delegable duty of the employer; he does not have immunity where he does an affirmative act causing or increasing the risk of injury. Something "extra" is required beyond a breach of his duty of general supervision and safety, for that duty is owed to the employer, not the employee. *Kruse v. Schieve,* 61 Wis.2d 421, 213 N.W.2d 64 (1973); *Kruse v. Schieve,* 72 Wis.2d 126, 240 N.W.2d 159 (1976); *Laffin v. Chemical Supply Co.,* 77 Wis.2d 353, 253 N.W.2d 51 (1977). Other states adopting a comparable approach are Arkansas, *Neal v. Oliver,* 246 Ark. 377, 438 S.W.2d 313 (1969); Illinois, *Collier v. Wagner Castings Co.,* 70 Ill. App.3d 233, 26 Ill.Dec. 641, 388 N.E.2d 265 (1979); Iowa, *Kerrigan v. Errett,* 256 N.W.2d 394 (Iowa 1977); Florida, *Zurich Ins. Co. v. Scofi,* 366 So.2d 1193 (Fla.App. 1979); Georgia, *Vaughn v. Jernigan,* 144 Ga.App. 745, 242 S.E.2d 482 (1978); Minnesota, *Dawley v. Thisius,* 304 Minn. 453, 231 N.W.2d 555 (1975); South Dakota, *Wilson v. Hasvold,* 86 S.D. 286, 194 N.W.2d 251 (1972); *Blumhardt v. Hartung,* 283 N.W.2d 229 (S.D.1979); and Vermont, *Steele v. Eaton,* 130 Vt. 1, 285 A.2d 749 (1971).

In New Jersey a different approach has been made to the problem. In *Miller v. Muscarelle,* 67 N.J.Super. 305, 170 A.2d 437 (1961), the court reviewed extensively the origin of the misfeasance-nonfeasance distinction and concluded it was based, illogically, upon the doctrine that tort liability arises where privity of contract exists between the injured party and the tort-feasor. Concluding that privity is now an obsolete doctrine, the court found that misfeasance and nonfeasance did not provide a viable distinction to determine the liability of one employee to another for negligence. The court then turned to the *Restatement of Agency 2d,* Sections 350–359, to find that the liability of the employee is determined by whether he has been assigned a specific duty by his employer which he has breached. If so, then he has liability to a fellow employee injured because of the breach of duty to the employer. Under the facts of the case, the court found no duty expressly assigned by the employer to the employee defendants.

The Louisiana approach is similar to that utilized in New Jersey although that state is less stringent in requiring specific assignment of the duty by the corporation. *Canter v. Koehring Company*, 283 So.2d 716 (La.1973). Again reliance is placed upon the *Restatement of Agency 2d* in arriving at this position. We believe it safe to say that Louisiana would allow recovery against some employee in any case involving an unsafe place to work. Of similar import are *Herbert v. Layman*, 125 Vt. 481, 218 A.2d 706 (1966) and *Craven v. Oggero*, 213 N.W.2d 678 (Iowa 1973).

We find some difficulties with the New Jersey and Louisiana approaches. Initially it should be noted that the *Restatement of Agency 2d* expressly states that the liabilities which flow from the workmen's compensation acts are not within the scope of the Restatement of "this Subject." *Restatement of Agency 2d*, Sec. 491, Comment. We, therefore, believe that whatever the merit of the Restatement position concerning the liabilities of employees to third persons, it must be applied with caution to liabilities arising under the workmen's compensation law. It is unnecessary for us to discuss whether the Restatement reflects the law of Missouri or decide whether it should be adopted as the law of Missouri as it pertains to relationships not involving the workmen's compensation law.

Secondly, we do not believe either the New Jersey approach or the Louisiana approach places a sufficient emphasis upon the workmen's compensation law itself. *See* dissenting opinion in *Canter v. Koehring, supra.* The factual situation before us does not present a determination of the law of agency. It presents rather the determination of the scope of an immunity from liability granted by a statute.

Thirdly, we believe neither New Jersey nor Louisiana have correctly assessed the importance of the distinction between those duties which arise solely because of the relationship of employment and those which exist independently of that relationship albeit occurring during the employment.

It was the purpose of the workmen's compensation law to place the burden of employment accidents upon the employer and ultimately upon the consuming public generally. To accomplish this purpose, the employee was entitled to recover for such accidents without the necessity of establishing negligence and was freed from defenses such as fellow servant, contributory negligence and assumption of risk. The employer on the other hand received immunity from general tort liability and damages and received an established basis for determining the extent of its monetary liability. The purpose of the Act was not to transfer the burden of industrial accidents from one employee to another. Clearly, plaintiff's suit here is an attempt to do that. Further, we need not avoid consideration of the practical effects of upholding liability of defendants here. Under present day industrial operations, to impose upon executive officers or supervisory personnel personal liability for an accident arising from a condition at a place of employment which a jury may find to be unsafe would almost mandate that the employer provide indemnity to such employees. That would effectively destroy the immunity provisions of the workmen's compensation law. Plaintiff contends that the amount recoverable under the workmen's compensation law is insufficient to fully compensate the plaintiff. We need not pass upon that question for the solution to that problem, if it exists, is with the General Assembly, not through a judicial interpretation of the Act which would seriously affect its basic purpose and intent.

In view of the law of this state as to employees which existed at the time our compensation act was passed and in view of the previously discussed policy considerations, we find the approach developed by the Wisconsin Courts comes closest to defining the intent of our legislature. Charging the employee chosen to implement the employer's duty to provide a reasonably safe place to work merely with the general failure to fulfill that duty charges no actionable negligence. Something more must be charged. The extent and nature of the additional charge can only be determined

and sorted out on a case-by-case basis. Here plaintiff charges defendant with failing to provide him with a reasonably safe place to work—nothing more. Thus, plaintiff charged no actionable negligence.

The preliminary writ of prohibition is made absolute.

KELLY, C. J., and GUNN, REINHARD, SNYDER, PUDLOWSKI and SIMON, JJ., concur.