Jill Ann **FELLING**, individually and as next friend and parent of April Nicole Felling and Kyle Butler Felling, Appellants,

v.

Randall R. **RITTER**, James A. Weidmaier, Richard Kessler, Carl Nagel, Larry R. Canfield and Jimmie Lafave, Respondents.

No. WD 47926.

Missouri Court of Appeals, Western District.

April 5, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 31, 1994.

Philip A. Klawuhn, Kansas City, for appellants.

Joseph A. Sherman, Kansas City, for respondents.

Before ULRICH, P.J., and
BRECKENRIDGE and SPINDEN, JJ.

SPINDEN, Judge.

Jill Ann Felling and her children sued six employees of Wire Rope Corporation of America for the wrongful death of Leo Felling. Leo Felling was killed on August 11, 1989, while working at Wire Rope. The Fellings' lawsuit against the employees was, in essence, an attempt to circumvent the exclusivity of the Workers' Compensation Act. The trial court dismissed their petition, and we affirm.

■ When we review a trial court's granting of a motion to dismiss, we give the pleadings their broadest intendment, treat all alleged facts as true, and construe the allegations favorably to the plaintiff. *Shapiro v. Columbia Union National Bank & Trust Company,* 576 S.W.2d 310, 312 (Mo.1978), *cert. denied,* 444 U.S. 831, 100 S.Ct. 60, 62 L.Ed.2d 40 (1979). All of the facts set out below are taken from the Fellings' petition and are deemed accurate.

Leo Felling was killed while he operated a rewinder machine which loaded wire onto a large reel. Felling's supervisors had instructed him to make "flying splices," a method of connecting wire from a feeder spool to the rewinder machine without stopping the machine. Flying splices would not have been possible had a safety guard covered the rewinder machine. Felling's belt got caught on a flange of an unguarded reel and dragged him onto the reel. He was crushed to death between the reel and a metal plate.

All of the defendants in this action were Wire Rope employees: Richard Kessler was vice president of manufacturing; Randall R. Ritter was mill manager; James A. Weidmaier was manager of engineering services; Jimmie Lafave was mill foreman; and Carl Nagel and Larry R. Canfield were Wire Rope engineers. Two years before Leo Felling began working for Wire Rope, an employee suggested to Ritter and Lafave that the company install a safety guard on the rewinder machine. Weidmaier and Kessler received copies of the suggestion. Nagel and Canfield responded by designing and installing a metal safety shield which protected workers when the machine would whip the end of a line around uncontrolled. One year before Felling began working at the plant, another employee suggestion to Ritter and Lafave, with copies to Weidmaier and Kessler, recommended installation of a "deadman's switch" designed to stop the machine when its operator got into trouble. Wire Rope did not install the suggested switch.

On August 10, 1992, Felling's widow and children filed a petition for wrongful death with the Buchanan County circuit court. The petition was divided into six counts.

Count I charged Ritter, Lafave, Nagel and Canfield with misconduct. It alleged that they acted "intentionally, willfully, wantonly and maliciously and with knowledge ... that such misconduct was substantially certain to result in bodily harm to ... Leo N. Felling ... or was done in utter disregard of the consequences."

Count II charged Ritter, Lafave, Nagel and Canfield with gross negligence. It averred that they "misresponded" to the safety complaint and that they "were malfeasant in such misresponse and in continuing to direct or approve of operation of said rewinder machine in wilful violation of federal and state safety law and in an otherwise dangerous condition[.]"

Count III charged Weidmaier and Kessler with gross negligence. It alleged that they "knew or should have known of the ... Safety Complaint ... that said rewinder machine needed a safety guard covering the revolving wooden reel and knew or should have known of the misresponding to such ... Safety Complaint and the dangerous condition of such rewinder machine." It also alleged that "Weidmaier and Kessler were malfeasant in connection with such misresponse and improper installation of the safety device and in continuing to direct or approve operation of said rewinder machine in willful violation of

federal and state safety law and in an otherwise dangerous condition[.]"

Count IV charged Ritter, Weidmaier and Lafave with "intentionally misrespond[ing] to the ... Safety Complaint by affirmatively checking out or inspecting the rewinder and the faulty safety systems and approving or clearing the rewinder for use without repairing the faulty safety systems[.]" The petition said, "[N]o such safety stop or 'dead man's' switch was installed on the rewinder machine and the violation of federal and state safety laws with respect to the lack of a safety guard covering the revolving reel and lack of safety stop and otherwise dangerous condition of the rewinder continued," and "such actions, aside from failure to employ proper safety equipment in response to the complaint in and of itself, caused the risk of injury to [Leo Felling] because had defendants not taken such actions approving or clearing the rewinder with the faulty systems for use, it would not have constituted the hazard to [Leo Felling]." It averred that they acted "intentionally, wilfully, wantonly and maliciously and with the knowledge of said defendants that such misconduct was substantially certain to result in bodily harm to decedent Leo N. Felling ... or was done in utter disregard of the consequences."

Count V charged Ritter, Weidmaier and Lafave of gross negligence by misresponding to the safety complaint. It alleged that they:

[W]ere malfeasant in connection with such misresponse to the ... Safety Complaint and otherwise concerning the dangerous condition created by a lack of a safety guard in continuing to direct operation of or approve operation of said rewinder machine in wilful violation of federal and state safety law and in an otherwise dangerous condition[.]

Count VI charged Kessler with gross negligence. It contended:

[Kessler] knew or should have known of the ... Safety Complaint [because he] was shown as copied with such complaint that said rewinder machine needed a emergency shut off or "dead man's" switch, because of the lack of a safety guard covering the revolving wooden reel, and knew or should have known of the misresponding to such

... Safety Complaint and dangerous condition of the rewinder machine generally.

It alleged that Kessler was "malfeasant in connection with such response and in continuing to direct or approve operation of said rewinder machine in wilful violation of federal and state safety law and otherwise in a dangerous condition[.]"

On October 6, 1992, Ritter, Weidmaier, Kessler, Nagel, Canfield and Lafave filed a motion to dismiss the Fellings' wrongful death petition. On March 8, 1993, the trial court granted the motion but vacated that order on April 7, 1993, after the Fellings asked it to reconsider its order. On May 3, 1993, after a hearing on the motion, the trial court again granted the defendant's motion. The trial court's orders concluded:

[A]ll of the acts alleged relate solely to a failure of Defendants, in their capacity as supervisory employees, to provide a safe working environment and to provide safe appliances and equipment. The conclusions that Defendants acted intentionally and with misfeasance are not supported by the facts alleged in the petition. The immunity provided employers under the Workers' Compensation Act extends to supervisory employees such as Defendants charged with carrying out the duties of the employer.

. . . .

Although creatively pled in terms of "misresponses", "misinstallation", and "misdesigns", Plaintiff's petition alleges nothing more than a breach of the employer's general duty to provide a reasonably safe place to work.... Under the facts pled, aside from the conclusions stated, the accident was caused by the failure of the employer through its employees to place any shield or guard on the revolving wooden reel. This failure is an alleged breach of the employer's non-delegable duty to provide a reasonably safe work place and, as such, falls within the Worker's Compensation immunity.

The Fellings contend that the trial court erred in dismissing their petition because, taking all the facts pleaded as true and the

fair inferences deductible from those facts, their petition averred:

> [D]efendants were third party co-employees who committed affirmative acts of malfeasance and misfeasance that confer upon plaintiffs multiple causes of action for intentional tort and gross negligence, which common law causes of action (1) were not precluded or preempted by the Missouri Workers' Compensation Act and (2) are within the subject matter jurisdiction of the trial court.

We disagree.

 An employer has a duty to provide a safe working environment, and this duty is not delegable. *State ex rel. Hartman v. Kintz*, 832 S.W.2d 9, 10 (Mo.App.1992); *State ex rel. Badami v. Gaertner*, 630 S.W.2d 175, 179 (Mo.App.1982). Section 287.120.1, RSMo 1986, gives an employer immunity from common law liability for breaches of this duty. *Hartman*, 832 S.W.2d at 10. This immunity extends to any employee charged with carrying out the employer's duties. *Id.*; *Badami*, 630 S.W.2d at 180. A co-employee's failure to perform a duty delegated to him by his employer does not give rise to a cause of action by a fellow employee who is injured because of the failure. *Badami*, 630 S.W.2d at 179.

A co-employee loses this immunity only if he affirmatively causes or increases his fellow employee's risk of injury. *Id.*; *McCoy v. Liberty Foundry Company*, 635 S.W.2d 60, 63 (Mo.App.1982). A petition must charge "something extra," beyond a breach of general supervision and safety for the co-employee to be liable. *Badami*, 630 S.W.2d at 179. The petition must allege "an affirmative ... act outside the scope of [the co-employee's] responsibility to provide a safe workplace[.]" *Tauchert v. Boatmen's National Bank of St. Louis*, 849 S.W.2d 573, 574 (Mo. banc 1993).

All of the acts alleged in the Fellings' petition related only to the defendants' general duty to provide a safe working environment. The petition did not allege any acts which were outside the scope of the defendants' responsibility to provide a safe workplace. Averments that the defendants "mis-responded," "misinstalled," "misdesigned," "acted intentionally" and with "malfeasance" were mere conclusions not supported by alleged fact. The trial court properly disregarded them. *Hartman*, 832 S.W.2d at 10. The Fellings pleaded nothing more than a breach of Wire Rope's duty to provide a safe work environment, and the defendants were immune from common law liability for such claims. The trial court properly granted the motion to dismiss for failure to state a claim and lack of jurisdiction.

All concur.