Marsha **HEDGLIN,** Terry **Hedglin,**
**Jr., Christie Hedglin, and Tara**
**Hedglin, Appellants,**

v.

**STAHL SPECIALTY COMPANY, and**
**Dale Corkran, Respondents.**

**No. WD 49613.**

Missouri Court of Appeals,
Western District.

May 9, 1995.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 27, 1995.

Application to Transfer Denied
Sept. 19, 1995.

David M. Mayer, Kansas City, for appellants.

Terry J. Brady, and George P. Coughlin, Kansas City, for respondent Stahl Specialty Co.

Robert G. Russell, and J. Christopher Spangler, Sedalia, for respondent Dale Corkran.

Before SPINDEN, P.J., and ULRICH and SMART, JJ.

SPINDEN, Presiding Judge.

The appellants in this wrongful death action ask this court to recognize "the dual capacity doctrine" which would permit them to maintain this action although they have already received benefits under Missouri's workers' compensation statutes. We decline to recognize the doctrine and affirm the trial court's dismissal of the appellants' suit against Stahl Specialty Company. We reverse, however, the trial court's dismissal of their suit against Dale Corkran, a supervisor at Stahl Specialty who, the appellants contend, acted outside the scope of his employment and caused the death of Terry L. Hedglin.

Hedglin died on July 13, 1992, after he fell into a vat of scalding water while working at Stahl Specialty's plant in Kingsville.[1] The appellants contend that Hedglin fell into a vat while carrying out the orders of his supervisor, Dale Corkran. They contend that Stahl Specialty designed, manufactured and assembled the vat.

Hedglin's wife and children sued Stahl Specialty and Corkran on January 19, 1994. They amended their petition twice to allege in Count I that Stahl Specialty was liable for Hedglin's death under a theory of strict liability. They averred that Stahl Specialty acted "in a dual capacity." It not only was Hedglin's employer, but it "manufactured, designed, assembled and built [the] cooling vat, not only for use in its own facilities, but for distribution to third parties." They alleged that Stahl Specialty's manufacture, design and assembly of the vat was "dangerously defective." In Count II, they pleaded a cause of action against Corkran, accusing him of "deliberately, intentionally, and in conscious disregard for the safety of [Hedglin], [by] subject[ing] [Hedglin] to the extreme and unreasonable risk of injury and death." They asserted that Corkran "ordered and directed [Hedglin] to undertake responsibilities which created a separate and extreme risk of injury and death, far beyond that anticipated or contemplated by the ordinary duties and responsibilities of [Hedglin's] position of employment."

On March 31, 1994, the trial court dismissed the petition. The clerk's notice of the dismissal stated that the bases for the court's ruling were "the reasons stated in the Suggestions in Support of [Stahl Specialty's and Corkran's] Motions [to dismiss]." Those reasons included immunity from suit because of the provisions of Missouri's workers' compensation statutes and the appellants' failure to state a claim for which relief could be granted.

■ In their appeal, the appellants ask this court to rule that if they can establish that Stahl Specialty was not only Hedglin's employer but also the designer, manufactur-

er, and distributor of the vat into which Hedglin fell, it should be able to sue Stahl Specialty under both a theory of tort liability and the workers' compensation statutes. They ask us to follow the courts of California and Ohio in recognizing what they term the dual capacity doctrine. The situations addressed in those cases, however, are much different than the circumstances surrounding Hedglin's injury. Even if we were to adopt the dual capacity doctrine, this would not be the proper case for its application.

The leading case recognizing the dual capacity doctrine is *Duprey v. Shane,* 39 Cal.2d 781, 249 P.2d 8 (banc 1952). The plaintiff in that case was injured in the course and scope of her employment as a nurse at a chiropractic clinic. The clinic's chiropractors treated her injury, but, because of negligence, aggravated her injury. The court concluded that workers' compensation statutes did not bar her from suing the clinic for tort liability. The court reasoned:

> [O]n principle and logic it would seem that it should make no difference to the liability of the doctor for malpractice whether the attending doctor is the employer or an insurance doctor. This fact should not affect the legal rights of the employee.... There seems to be no logical reason why the employer-doctor, when he undertakes to treat the industrial injury, should not be responsible in a civil action for his negligent acts in treating that injury.... In treating the injury [the chiropractor] did not do so because of the employer-employee relationship, but did so as an attending doctor, and his relationship to * * * [plaintiff] was that of doctor and patient.
>
> ... It is true that the law is opposed to the creation of a dual personality, where to do so is unrealistic and purely legalistic. But where ... it is perfectly apparent that the person involved—[the chiropractor]— bore towards his employee two relationships—that of employer and that of a doctor—there should be no hesitancy in recognizing this fact as a fact. Such a conclusion, in this case, is in precise accord with

---

1. Because this is an appeal from a dismissal, we assume the facts as pleaded by the appellants to be true.

the facts and is realistic and not legalistic. We conclude, therefore, than an employee injured in an industrial accident may sue the attending physician for malpractice if the original injury is aggravated as a result of the doctor's negligence, and that such right exists whether the attending doctor is the insurance doctor or the employer.

*Id.* 249 P.2d at 15.

The Supreme Court of Ohio adopted the reasoning of *Duprey* in *Guy v. Arthur H. Thomas Company*, 55 Ohio St.2d 183, 378 N.E.2d 488 (1978). In that case, a hospital laboratory technician suffered mercury poisoning while working in the hospital's cardiology department. Hospital physicians treated her, but their negligent failure to diagnose her properly aggravated her condition. Although she had collected workers' compensation benefits, she sued the hospital for tort liability. The *Guy* court permitted the tort suit. It reasoned:

> The genesis of workers' compensation in the United States ... was the inability of the common-law remedies to cope with modern industrialism and its inherent injuries to workers.... Implicit therefrom is the concept that workers' compensation statutes relate generally to the legal connection or relationship between employer and employee. Perhaps best expressing the no-fault theory of workers' compensation as one essentially of *status* is the following comment by the Supreme Court of the United States, in *Cudahy Packing Co. v. Parramore* (1923), 263 U.S. 418, at page 423, 44 S.Ct. 153, at page 154, 68 L.Ed. 366:

> "Workmen's compensation legislation rests upon the idea of status, * * * that is, upon the conception that an injured workman is entitled to compensation for an injury sustained in the service of an industry to whose operation he contributes his

work as the owner contributes his capital—the one for the sake of the wages and the other for the sake of the profits. The act is based not upon any act or omission of the employer, but upon the existence of the relationship which the employee bears to the employment because of and in the course of which he has been injured."

. . . .

In juxtaposition, where the employer-employee relationship does not exist, workers' compensation has not been found to affect the right of a workman to sue a third-party tortfeasor for injuries received in the course of his employment through negligence.

. . . .

> We find the logic expressed in *Duprey*, ... to be compelling[.] Appellee's argument is that Ohio's workers' compensation requires us to ignore the fact that appellee hospital was not only the employer of appellant, but also the treating hospital and, as such, charged with the obligations that arise in a hospital-patient relationship. The anomalous result urged by appellee is that the workers' compensation laws of Ohio require appellee hospital's liability to be distinguished upon whether the malpractice that aggravates a compensable injury was bestowed upon its hospital employee or any other hospital's employee or, for that matter, another's employee.

*Id.* 378 N.E.2d at 490–92 (emphasis in the original).

■ The appellants contend that the same rationale should be applied to their case. They argue that Stahl Specialty acted in two capacities: It not only designed, manufactured, and assembled the cooling vat for its own use, but it distributed them to third parties.[2] They assert that they should not be restricted to a workers' compensation remedy because they pleaded a cause of action against Stahl Specialty "in a capacity

---

**2.** Stahl Speciality denied this at oral argument. We must deem the fact to be true, however, because the trial court disposed of the case by granting Stahl Specialty's motion to dismiss. When we review a trial court's granting of a motion to dismiss, we treat all facts alleged in the petition as true. *Shapiro v. Columbia Union Nat'l Bank & Trust Co.*, 576 S.W.2d 310, 312

(Mo.1978), *cert. denied*, 444 U.S. 831, 100 S.Ct. 60, 62 L.Ed.2d 40 (1979). Whether Stahl Specialty distributed the vat to others is significant because the appellants rest their strict liability claim on § 537.760, RSMo 1994, which requires, among other things, that before an entity will be strictly liable for a product it must have "transferred a product in the course of his business."

separate from its role as an employer; i.e., [they pleaded] a cause of action for strict liability against [Stahl Specialty] for the manufacture, design and assembly of the defective cooling vat."

They misunderstand the dual capacity doctrine as enunciated in the *Duprey* and *Guy* cases. As the *Guy* court explained:

It has been stated that the decisive test of dual-capacity is not with how separate the employer's second function is from the first, but whether the second function generates obligations unrelated to those flowing from the first, that of an employer. 2A Larson, [Workmen's Compensation Law 14–112, § 72.80 (1976)].

378 N.E.2d at 491. Even if we were to recognize the dual capacity doctrine, it would not be applicable to the appellants' case as explained by the *Guy* court because, as the appellants plead their case, Stahl Specialty's function as vat distributor did not generate any obligations to Hedglin different than Stahl Specialty's obligations to him as employer.

Stahl Specialty's obligation to Hedglin as employer was to provide him a safe workplace. "The employer has a nondelegable duty to provide a reasonably safe place to work." *Kelley v. DeKalb Energy Company*, 865 S.W.2d 670, 672 (Mo. banc 1993). The appellants contend that the vat into which Hedglin fell was "dangerously defective." In other words, the vat created a dangerous workplace. The appellants necessarily argue the same obligation under either a theory of tort liability or under workers' compensation. The dual capacity doctrine is not applicable.

Workers' compensation is the exclusive remedy for the appellants against Stahl Specialty. In § 287.120, RSMo 1994, the General Assembly mandated:

1. Every employer subject to the provisions of this chapter shall be liable, irrespective of negligence, to furnish compensation under the provisions of this chapter for personal injury or death of the employee by accident arising out of and in the course of his employment, *and shall be released from all other liability therefor*

*whatsoever,* whether to the employee or any other person. . . .

2. The rights and remedies herein granted to an employee shall exclude all other rights and remedies of the employee, his wife, her husband, parents, personal representatives, dependents, heirs or next kin, at common law or otherwise, on account of such accidental injury or death, except such rights and remedies as are not provided for by this chapter.[3]

In construing this statute, the Supreme Court of Missouri has said, "The workers' compensation law excludes common law actions by employees against their employers for accidental injuries arising out of and in the course of employment." *Kelley,* 865 S.W.2d at 671.

In the *Kelley* case, an employee was injured by an exploding corn flamer designed and manufactured by the employer. The employer built about 20 corn flamers and distributed them throughout its system. The court concluded that the employee could not sue his employer for tort liability because "his injury occurred while performing work within the scope of the . . . business." *Id.*

The trial court properly granted Stahl Specialty's motion to dismiss. We cannot say the same, however, for the court's dismissing the appellants' action against Corkran, Hedglin's supervisor.

■■■■ An employer's immunity under § 287.120 from common law liability for failure to provide a safe working environment extends to any employee. The fellow employee loses this immunity, however, if he or she affirmatively commits negligent acts outside the scope of an employer's responsibility to provide a safe workplace. *Id.* at 672. To state a cause of action against a fellow employee, it must charge "something extra," beyond a breach of general supervision and safety. *Felling v. Ritter,* 876 S.W.2d 2, 5 (Mo.App.1994).

The appellants satisfied this requirement. In their allegations against Corkran, they averred:

---

**3.** We added the emphasis.

... Defendant Corkran deliberately, intentionally, and in conscious disregard for the safety of [Hedglin], subjected [Hedglin] to the extreme and unreasonable risk of injury and death.

... On July 1, 1992, Defendant Corkran ordered and directed [Hedglin] to undertake responsibilities which created a separate and extreme risk of injury and death, far beyond that anticipated or contemplated by the ordinary duties and responsibilities of [Hedglin's] position of employment. [Hedglin] was directed to remove a screen or grate from the agitator which was submerged in the cooling vat filled with scalding water. The vat was not drained. Using a forklift with a cable or chain, [Hedglin] was ordered or directed to climb to the top of the vat, which was unguarded and unprotected for human use, and hang from the forks of a forklift in order to lift the grate out of the vat of scalding water.

... At the time [Hedglin] was injured, Defendant Corkran was operating the forklift from which [Hedglin] was hanging. Defendant Corkran was acting outside of a supervisory role, and was acting as a co-employee of [Hedglin] at the time of the accident.

These were sufficient pleadings to overcome a motion to dismiss.

Corkran argues that the appellants pleaded mere conclusions and did not state facts which would aver liability. We disagree. The appellants alleged that Corkran, contrary to his obligation to assure Hedglin a safe workplace, personally arranged an extremely dangerous scheme to remove a screen or grate from the vat by hanging Hedglin from a forklift.

These allegations seem close to those asserted in *Tauchert v. Boatmen's National Bank of St. Louis,* 849 S.W.2d 573 (Mo. banc 1993), in which the Supreme Court considered the allegations of tort liability an employee made against his job foreman. The employee was injured when an elevator cab on which he was working fell five or six floors to the bottom of the elevator shaft. The employee averred that the foreman had personally arranged a faulty hoist system for the elevator. The court ruled that this fact was sufficient to overcome a motion for summary judgment filed by the foreman who claimed that workers' compensation statutes granted him immunity from the employee's suit.

The *Kelley* court clarified the types of acts which will create liability. The court said, "Defendants demonstrated that the condition of the corn flamer was part of the employer's nondelegable duty to provide a safe workplace, shielding the co-employees from liability. There was no showing that the flamer was 'make-shift' or 'jerry-rigged.'" 865 S.W.2d at 672.

■ The appellants' contentions that Corkran rigged a forklift with a cable or chain and ordered Hedglin to suspend himself on the cable or chain would satisfy the affirmative negligence described in the *Tauchert* and *Kelley* cases. The appellants may not be able to prove these allegations, but the allegations were sufficient to withstand a motion to dismiss.

Hence, we reverse the trial court's granting of Corkran's motion to dismiss the appellant's wrongful death action against him. We affirm the trial court's granting of Stahl Specialty's motion to dismiss.

ULRICH, J., concurs.

SMART, J., concurs by way of separate opinion.

SMART, Judge, concurring.

I concur. I agree with the analysis of the majority concerning the "dual capacity" issue and concur in the reinstatement of the claim against Corkran, Hedglin's co-employee. I write separately to express some concerns as to the vagueness of current Missouri law on the issue of co-employee liability.

Section 287.120.1, RSMo 1994[1] provides that an employer subject to the provisions of Missouri Workers' Compensation Law "shall be released from all other liability therefor whatsoever, whether to the employee or any other person." Section 287.150.1 states that:

1. All sectional references are to Missouri Revised Statutes 1994, unless otherwise indicated.

Where a third person is liable to the employee or to the dependents, for the injury or death, the employer shall be subrogated to the right of the employee or to the dependents against such third person, and the recovery by such employer shall not be limited to the amount payable as compensation to such employee or dependents, but such employer may recover any amount which such employee or his dependents would have been entitled to recover....

Missouri has consistently held that a co-employee is a third person within the meaning of § 287.150. *See, e.g., Kelley v. DeKalb Energy Co.,* 865 S.W.2d 670 (Mo. banc 1993); *Tauchert v. Boatmen's Nat. Bank,* 849 S.W.2d 573 (Mo. banc 1993); *Sylcox v. National Lead Co.,* 225 Mo.App. 543, 38 S.W.2d 497 (1931). Thus, a co-employee may be sued for negligence by an injured employee. However, the courts have said that in order to maintain such action, the injured employee must allege "[s]omething more" beyond the co-employee's failure to implement the employer's duty of providing a safe workplace. *State ex rel. Badami v. Gaertner,* 630 S.W.2d 175, 180 (Mo.App.1982). The action in question must, according to our decisions, be an "affirmative negligent act," *Tauchert,* 849 S.W.2d at 574, one that "affirmatively causes or increases his fellow employee's risk of injury," *Felling v. Ritter,* 876 S.W.2d 2, 5 (Mo.App.1994) or a "breach of [the] personal duty of care owed to the plaintiff." *Marshall v. ETI Explosives Technologies Int'l.,* 874 S.W.2d 442, 444 (Mo.App.1994). No easily applied formula has been developed, the courts instead saying frequently that the "something more" must be sorted out "on a case-by-case basis." *Badami,* 630 S.W.2d at 181. In *Tauchert,* the court found that a co-worker's "alleged act of personally arranging the faulty hoist system for the elevator" could constitute "an affirmative negligent act outside the scope of his responsibility to provide a safe workplace for plaintiff." 849 S.W.2d at 574. In *Kelley,* the court held that co-employees who designed and constructed equipment which exploded, injuring plaintiff, were immune from liability because there was no showing that they had "jerry-rigged" the equipment. While these decisions have a certain logic, one wonders whether we are not searching for a better way to describe conduct actionable by the co-employee. One also wonders whether the status of the co-worker as a supervisor may be more of a red herring than a primary factor in the analysis.

Missouri is one of a distinct minority of jurisdictions which allow an injured employee to sue a co-employee for negligence. 2A A. Larson, The Law of Workmen's Compensation, § 72.11 n. 13.2 (1994 Supp.). Some states have enacted statutes granting immunity from suit to both the employer and his employees and some states have extended immunity to employees by judicial decision. The immunity extended co-employees by these states is often limited to negligent acts; many states allow co-employee liability for intentional torts.[2]

Different jurisdictions utilize different approaches to reach the conclusion that the immunity for negligence provided by workers' compensation should be extended to co-employees. In Montana, for example, it is reasoned that "[c]o-employee protection is a natural extension of enterprise liability and relieves the employee of justifiable apprehension about the possibility of a suit against him." *Massey v. Selensky,* 225 Mont. 101, 731 P.2d 906, 907 (1987). In *Majors v. Moneymaker,* 196 Tenn. 698, 270 S.W.2d 328 (1954), the Supreme Court of Tennessee expressed concern about the effect of allowing the insurance carrier to be subrogated against the negligent co-employee, pointing out that often the negligent co-employee may also be injured, and could be deprived of benefits by the right of subrogation. *Id.* at 331. The Supreme Court of Idaho focused on the idea that a co-employee is merged in

**2.** States with statutory provisions excepting intentional torts from immunity are Alabama, Arizona, California, Connecticut, Florida, Hawaii, Idaho, Iowa, Louisiana, Minnesota, Mississippi, Montana, Nebraska, New Hampshire, New Jersey, Oregon, Pennsylvania, South Dakota, Texas, West Virginia, Wisconsin and Wyoming. States that have carved out an intentional tort exception through judicial decision are Alaska, Illinois, Indiana, Michigan, New York, North Carolina, Ohio, Oklahoma, South Carolina, Tennessee, Utah and Washington. 2A A. Larson, The Law of Workmen's Compensation, § 72.21 n. 23.1 and n. 23.2 (1994 Supp.).

the identity of the employer, reasoning that an employee acting within the scope of his employment is an agent of the employer. *White v. Ponozzo,* 77 Idaho 276, 291 P.2d 843, 845 (1955). In *Dunn v. Peabody Coal Co.,* 855 F.2d 426 (7th Cir.1988), the philosophical underpinnings of the Illinois workers' compensation statute are scrutinized. The court points out that the general purpose of workers' compensation was to substitute an entirely new system of rights and remedies for the common law and older statutory schemes governing the relationships between employer and employee. *Id.* at 428. This provides a "uniform, speedy, and cost-efficient" mechanism of getting benefits into the hands of injured employees. *Id.* The court explained that the basic purpose of placing the cost of industrial accidents on industry, and the elimination of fault as a basis for liability, are undermined where the cost is shifted from one employee to another. *Id.*[3]

In Missouri, one concern noted has been the employer's sense of responsibility to provide indemnity to its employees when they are sued for their negligent acts. *Badami,* 630 S.W.2d at 180. If the employer must provide a defense and offer indemnity to its employees who are sued, the employer will, after first paying the worker's compensation claim, then also pay the additional compensation awarded in the tort claim. This will undermine the immunity provisions of the worker's compensation laws.[4] If the employer does not defend and indemnify, the employer risks creating morale problems by appearing to be disloyal to its workers. The employer also has the option of choosing to seek subrogation, which would not only further disharmony between employer and workers, but would also theoretically cause the cost of the injury to be passed on to the negligent co-employee instead of being borne by the industry. *See Rylander v. Chicago Short Line Ry. Co.,* 17 Ill.2d 618, 161 N.E.2d 812, 817–18 (1959). Consequently, a rule allowing a co-employee to be sued as a third party for negligent acts tends to undermine the basic scheme of the worker's compensation statutes.

In my view, the inquiry need not logically focus on the status of the culpable co-employee, as to whether that person is a supervisor or otherwise. Nor, in my view, is it appropriate to emphasize the scope of the employer's duty to provide "a safe place in which to work." Rather, the focus should be on the conduct of the co-employee causing the injury. Negligent acts of any kind (nonfeasance or misfeasance) logically should be shielded from liability if we wish to be consistent with the spirit of the worker's compensation laws. However, such logic does not require that we shield from liability co-employees guilty of intentional torts or misconduct tantamount thereto.

In the instant case, it is alleged that Corkran ordered Hedglin to hang from the forks of a forklift over a large vat of scalding water. It is further alleged that Corkran "deliberately, intentionally, and in conscious disregard" for the safety of Hedglin, subjected Hedglin to an "extreme and unreasonable risk" of injury and death, "far beyond that anticipated or contemplated by the ordinary duties and responsibilities" of Hedglin's employment. I suggest that this petition alleges the "something more" required by existing case law.

---

**3.** For further analysis of how various jurisdictions handle this issue the reader is referred to *Right to Maintain Direct Action Against Fellow Employee for Injury or Death Covered by Workmen's Compensation,* 21 A.L.R.3d 845 (1968).

**4.** This issue was a concern to the Eastern District of this Court, which transferred to the Missouri Supreme Court a case in which, at trial, a police officer had obtained a $473,000 judgment against a fellow officer who had negligently operated, without proper equipment, the vehicle in which plaintiff had been injured. *Dierkes v. Banahan,* No. 59931, slip op., — S.W.2d — [1992 WL 59719] (Mo.App.E.D. March 31, 1992). This case was settled in the Supreme Court before submission.