Clutts v. Manchester Energy, et al.   CV-96-193-M   06/02/98

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


James Clutts,
      Plaintiff

      v.                                    Civil No. 96-193-M

Manchester Energy, Inc.,
a/k/a Manchester Energy Group, Inc.,
Zahren Alternative Power Corp.,
Zapco Energy Tactics Corp., and
Energy Tactics, Inc.
      Defendant(s)


**O R D E R**


     Plaintiff, James Clutts, brings claims of negligence, strict product liability, and breach of warranty, arising from a workplace accident in which he was injured.  Defendant, Energy Tactics, Inc., Clutts's employer at the time of the accident, moves for summary judgment on grounds that New Hampshire's workers' compensation law bars plaintiff's claims.  In response, plaintiff contends that Energy Tactics is liable under applicable exceptions to an employer's immunity, either under a "dual capacity" theory or because the circumstances of the accident constitute an intentional tort.


**STANDARD OF REVIEW**

     Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party first must show the absence of a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). If that burden is met, the opposing party can avoid summary judgment on issues that it must prove at trial only by providing properly supported evidence of disputed material facts that would require trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The court interprets the record in the light most favorable to the nonmoving party and resolves all inferences in its favor. Saenger Organization v. Nationwide Ins. Assoc., 119 F.3d 55, 57 (1st Cir. 1997). Summary judgment will be granted if the record shows no trialworthy factual issue and if the moving party is entitled to judgment as a matter of law. EEOC v. Green, 76 F.3d 19, 23 (1st Cir. 1996).

No factual dispute exists for purposes of the present summary judgment motion. Plaintiff's response to defendant's motion, titled "Answer and Objection to Defendant Energy Tactics, Inc.'s Motion for Summary Judgment," does not comply with the local rules of this court. An objection to summary judgment "shall be accompanied by a memorandum," LR 7.1(a)(2), and the memorandum:

> shall incorporate a short and concise statement of material facts, supported by appropriate record citations, as to which the adverse party contends a genuine dispute exists so as to require trial. All properly supported material facts set forth in the moving party's factual statement shall be deemed admitted unless properly opposed by the adverse party.

2

LR 7.2(b)(2).  Plaintiff's "Answer and Objection" is not accompanied by a memorandum of law, and, to the extent the pleading itself was intended to serve as a memorandum, it does not incorporate a statement of material facts nor does it include appropriate record citations.  Plaintiff's "Answer" in which plaintiff "admits the first three sentences of paragraph 1 of Defendant's . . . motion for summary judgment" and "denies" the remainder is entirely ineffective as an objection to a motion for summary judgment.  Accordingly, the properly supported factual statements in defendant's memorandum are deemed admitted for purposes of the present motion.

## BACKGROUND

At the time of plaintiff's accident, Energy Tactics, Inc. was in the business of recovering landfill gas and using it to produce electrical power.  In January 1990, James Clutts began working as supervisor of an Energy Tactics site on Dunbarton Road in Manchester.  The Dunbarton Road site was operated by Energy Tactics for Manchester Energy Group, Inc., with machinery designed and manufactured by Energy Tactics and owned by Manchester Energy.

On April 17, 1993, Clutts responded to an after-hours alarm at the Dunbarton Road site.  He found the energy generating machinery shut down and a reverse power problem.  (Reverse power occurs when the electrical generator begins to use rather than generate power.)  Clutts first called his off-site supervisor and

3

then began to investigate the problem. When Clutts opened the door and entered the high voltage electrical components area of the generator machinery, electricity arced, causing an explosion that threw Clutts out of the area. Clutts remembers standing outside of the generator machinery, burned and bleeding. He managed to call 911 and was taken to Catholic Medical Center where he was admitted for nine days of treatment.

Clutts obtained workers' compensation benefits for his work-related injuries. He brought suit against Energy Tactics and Manchester Energy (and Manchester Energy's alleged successor corporations), based on Energy Tactics's design, manufacture, and sale of the generating machinery involved in the accident.

## DISCUSSION

Energy Tactics contends that New Hampshire's workers' compensation law provides the exclusive remedy for Clutts's workplace injuries and bars all of Clutts's claims against it, his employer. Clutts acknowledges the immunity provided by the statute to employers, but argues that intentional torts as well as acts by an employer performed in a separate capacity are not protected by that immunity.

## A. Intentional Tort

4

To the extent Clutts has alleged an intentional tort[1] by Energy Tactics, that theory does not provide an escape from the exclusivity of the workers' compensation remedy. While the workers' compensation statute excepts intentional torts committed by those acting on the employer's behalf, it bars <u>all</u> common-law causes of action, including claims based on intentional torts, against an employer. N.H. Rev. Stat. Ann. § 281-A:8; <u>Miller v. CBC Companies, Inc.</u>, 908 F. Supp. 1054, 1068 (D.N.H. 1995). Thus, Clutts's intentional tort claims are barred by the exclusivity provisions of the workers' compensation statute.

## B.   <u>Dual Capacity Doctrine</u>

Clutts next argues that in its independent capacity as product manufacturer, Energy Tactics owed him different duties, i.e. duties not arising from his employment relationship. As product manufacturer, Clutts contends, Energy Tactics is liable for injuries caused by its allegedly defective product. The theory that an exception to workers' compensation immunity exists when an employer operates in a capacity separate and distinct from the employment context is known as the "dual capacity" doctrine. <u>See</u> Michael A. DiSabatino, Anno.: Modern Status: "Dual Capacity Doctrine" as Basis for Employee's Recovery from Employer in Tort, 23 ALR 4th 1151, § 2 (1983).

---

[1]"To constitute an intentional tort, the tortfeasor must have known that his conduct was <u>substantially certain</u> to result in injury." <u>Thompson v. Forest</u>, 136 N.H. 215, 220 (1992).

While New Hampshire recognizes the dual capacity doctrine, the New Hampshire Supreme Court has yet to find factual circumstances warranting its application. See Ryan v. Hiller, 138 N.H. 348, 350-51 (1994). To maintain a product liability claim against an employer under the dual capacity doctrine, an employee must at least have been injured by a product designed and manufactured by the employer and then sold to the public. See Quinn v. National Gypsum, Co., 124 N.H. 418,421 (1984); Robbins v. Seekamp, 122 N.H. 318, 321 (1982); DePaolo v. Spaulding Fibre Company, Inc., 119 N.H. 89, 90 (1979). More recently, the New Hampshire Supreme Court has focused on the actual relationship between the employer and employee at the time of the accident to determine whether dual capacity existed. Ryan, 138 N.H. at 351. In Ryan, the court concluded that because the "dominant relationship" at the time of the accident was employment, the employer was not acting in a separate capacity when driving his employees from one office to another. Id.

Few other jurisdictions recognize as broad a dual capacity doctrine as might be suggested by the early New Hampshire cases. See 6 Arthur Larson, Larson's Workers' Compensation §§ 72.81 and 72.83 at 14-290.124 (1993) (citing cases); see also Henning v. General Motors Assembly Div., 419 N.W.2d 551, 559 (Wis. 1988) (citing cases); R. Carol Terry, Anno.: Workmen's Compensation Act As Furnishing Exclusive Remedy For Employee Injured By Product Manufactured, Sold, or Distributed By Employer, 9 ALR4th 873 §§ 4 and 5 (Supp. 1997). Since the New Hampshire Supreme Court

6

decided <u>Robbins v. Seekamp</u>, in which it relied on cases from other jurisdictions in describing the elements of dual capacity for purposes of product liability claims, state law in those jurisdictions has limited the dual capacity doctrine either by statute or common law development. <u>See, e.g.</u>, <u>Grahn v. Tosco Corp.</u>, 68 Cal. Rptr. 2d 806, 814 (Cal. Ct. App. 1997) (limited by statute); <u>Snyder v. Pocono Medical Center</u>, 690 A.2d 1152, 1156-57 (Pa. 1997) (dual capacity doctrine not applicable when employee performing work-related task); <u>Hyman v. Sipi Metals, Corp.</u>, 509 N.E.2d 516, 520 (Ill. App. 1987) (employer's separate capacity must also be a legally distinct persona of the employer). Thus, the current trend in other jurisdictions is to reject the dual capacity doctrine entirely, or to limit it -- requiring either dual employer persona or circumstances in which an employee's use of the employer's product was not predominantly related to the employee's work. <u>See, e.g.</u>, <u>Caraccioli v. KFC Mfg. Corp.</u>, 761 F. Supp. 119, 121 (M.D. Fla. 1991); <u>Hesse v. Champ Serv. Line</u>, 707 So.2d 1295, 1297 (La. App. 1998); <u>Sormani v. Orange County Community College</u>, 659 N.Y.S.2d 507, 508 (Sup.Ct. 1997); <u>Hedglin v. Stahl Specialty Co.</u>, 903 S.W.2d 922, 924 (Mo.Ct.App. 1995); <u>Ritchie v. Bridgestone/Firestone</u>, 621 So.2d 288, 290 (Ala. 1993); <u>Estate of Coates v. Pacific Engineering</u>, 791 P.2d 1257, 1259 (Haw. 1990).

The New Hampshire Supreme Court has also limited the applicability of the dual capacity doctrine to circumstances in which the employee's injury is not work related, or the fact of

7

employment is not the dominant relationship between the injured employee and his employer. See Ryan, 138 N.H. at 351; Mello v. Gouin's Plumbing & Heating, 137 N.H. 675, 678 (1993). Because the dual capacity theories in Ryan and Mello did not involve the employer's product or a product liability claim, those decisions are not necessarily controlling precedent in this case. See Mello, 137 N.H. at 678 ("it is an open question whether an employee who has received workers' compensation may be able to maintain a products liability suit against the employer").

The question appears to still be open. Nevertheless, given the consistent development of the law in other jurisdictions and the combined effect of the New Hampshire dual capacity cases, the course the New Hampshire Supreme Court would likely take, if it were now presented with a dual capacity issue in the context of a product liability claim, is reasonably clear. See VanHaaren v. State Farm Mut. Auto. Ins. Co., 989 F.2d 1, 3 (1st Cir. 1993) (federal court may predict development of state law if course is reasonably clear). To impose liability on an employer under a dual capacity theory, the New Hampshire Supreme Court would likely require both that the employer's product be in public commerce and that the employee's injury, caused by the employer's product, not be primarily work-related. Put another way, the dual capacity doctrine may circumvent an employer's statutory immunity under New Hampshire law only if the employer's role as product manufacturer, as opposed to its role as employer,

8

predominates in the circumstances surrounding the employee's injury.

Since applicability of the dual capacity doctrine necessarily depends on an employer's role and relationship to an employee's injury caused by its product, circumstances surrounding the injury will determine potential liability. The more closely related the injury is to an employee's work, the more the employer's role as employer will predominate, immunizing the employer from liability. At the other end of the spectrum, to the extent an employee is using or is exposed to the employer's product as any other member of the public might be, and not because of circumstances or requirements of employment, the employer's predominant relationship to the injury is more likely to be cast as product manufacturer rather than as employer.

When an accident involving an employer's product occurs outside of the course or scope of an employee's work, workers' compensation is not applicable and, accordingly, immunity would not protect the manufacturer-employer. For example, if during a family trip unrelated to work, a Firestone Tire Company employee is involved in a car accident caused by defective Firestone tires, his employer (Firestone) would be liable as product manufacturer and would not be protected by workers' compensation immunity. In that circumstance, the employer is obligated only as product manufacturer, having no relationship to the injury as employer.

An employer's relationship to an injury, as employer, is closer when the employer's product causes injury to an employee during the course of employment, but under circumstances unrelated to the employment itself. In that case, an employer acts both as employer, protected by workers' compensation immunity, and as manufacturer of a defective product, not protected by immunity. When an employer acts in dual capacities, it may be liable only if under the circumstances surrounding the particular injury, its role as product manufacturer predominates over its role as employer -- that is, if an employee's product-related injury is only incidental or coincidental to employment, the employer is more likely to be found to be acting in a separate capacity.

For example, if a Firestone Tire Company sales person is injured during a business sales trip in an accident caused by a defective Firestone tire on her rental car (or someone else's car), the fact that the defective tire was manufactured by Firestone, rather than Goodyear or Michelin, would be merely coincidental to her employment. The employee's injury would have occurred under circumstances that could as easily have involved any other member of the public. Firestone's relationship to the injury would be predominantly that of tire manufacturer, not employer, and Firestone would likely be liable as product manufacturer rather than immune as employer, even though its employee was injured in the course of her employment. If, however, Firestone were to designate an employee to service

10

Firestone tires that have been sold to rental car companies, and that employee were injured while testing such defective Firestone tires as part of her job, the fact that the defective tire was made and sold by Firestone would be central, not incidental, to her employment. As Firestone's relationship to her in the context of her injury would predominantly be as employer, Firestone would be immune.

In this case, it is undisputed that plaintiff was injured in the course of his employment – at the Dunbarton Road site that he supervised as part of his job. The generator that caused his injury was manufactured by his employer, Energy Tactics, and had been sold to Manchester Energy. Thus, Energy Tactics at least facially meets the first test of dual capacity – it manufactured a product that caused injury and was sold to the public.[2] However, based on the undisputed facts presented for summary judgment, the circumstances surrounding the accident and Clutts's injury were not divorced from or independent of his employment, nor were they only incidentally related, but instead were directly tied to and intertwined with his employment with Energy Tactics.

_____

[2]The sale of the generator to Manchester Energy seems to involve something different from a typical sale into public commerce, since Energy Tactics continued to operate and service the sold generator with its own employees. The situation presented here seems more analogous to the employer's own generator having malfunctioned and injured the employee in the employer's own work environment. See, e.g., DePaolo, 119 N.H. at 90.

Clutts's job with Energy Tactics was to operate the previously sold generator to produce electrical power for Manchester Energy. Clutts was injured by the generator because, as part of his job, he responded to an after-hours alarm to investigate and resolve an apparent problem with the generator's operation. In the course of his work, he opened the generator and the resulting electrical arc injured him. Clutts was exposed to the generator and its alleged defect only because the specific requirements of his job with Energy Tactics mandated his contact with the product. The fact that his work caused him to come into contact with the Energy Tactics generator was not incidental or coincidental to his work -- operating that particular generator was his job. In that context, then, Energy Tactics' relationship to Clutts's accident and injury was predominately that of employer, and not manufacturer of the generator. Therefore, Clutts's injury was entirely work-related -- primarily resulting from his employment relationship with Energy Tactics.

As plaintiff has not shown that Energy Tactics was operating in a separate capacity distinct from its employment relationship with him at the time of the accident, the dual capacity doctrine would not operate in this case to avoid the employer's statutory immunity under New Hampshire law. Accordingly, Energy Tactics is entitled to summary judgment with respect to plaintiff's product liability claims.

C.   **Unsafe Workplace**

Clutts's claim against Energy Tactics based on his allegations of an unsafe workplace is of course barred by the exclusive remedy provision of New Hampshire's worker's compensation statute. N.H. Rev. Stat. Ann. § 281-A:8,I(a) (Supp. 1997). Accordingly, Energy Tactics is entitled to summary judgment in its favor as to that claim as well.

D.   **Motion for Oral Argument**

Although oral argument is often helpful, and usually granted upon request, the briefs are fully adequate and oral argument is not necessary at this point. See LR 7.1(d). If counsel believe that the absence of oral argument caused the court to overlook any aspect of the case that should be considered, they may file motions to reconsider and an accompanying short statement as to why oral argument might be helpful. Defendant's motion for oral argument is denied.

## CONCLUSION

For the foregoing reasons, defendant's (Energy Tactics) motion for summary judgment (document no. 20) is granted. Defendant's motion for oral argument (document no. 24) is denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

13

June 2, 1998

cc:   Christopher A. Bandazian, Esq.
      Richard C. Nelson, Esq.
      Eric G. Falkenham, Esq.