George W. Draper III, Judge, dissenting.
*558 I respectfully dissent from the principal opinion's holding Appellant failed to establish Co-employees owed McComb a duty separate and distinct from his employer's nondelegable duty to provide a safe workplace when Co-employees ordered McComb to perform his courier duties in a severe winter storm, which ultimately resulted in his death. Although Appellant inartfully argues there are material facts in dispute regarding the duty owed to McComb that defeat summary judgment, I believe the pleadings established Co-employees' directive that McComb continue his route in increasingly dangerous weather conditions created a transitory risk in negligently carrying out the details of the work, resulting in a breach of duty beyond the employer's nondelegable duty to provide a safe workplace. I would reverse the circuit court's judgment and remand for further proceedings.
"[T]he employer's nondelegable duty to provide a safe workplace does not include transitory risks arising from an employee's negligence in carrying out his or her work." Peters v. Wady Indus., Inc. , 489 S.W.3d 784, 799 (Mo. banc 2016). The determination as to whether a co-employee's "personal duty exists depends on the particular facts and circumstances of each case." Parr v. Breeden , 489 S.W.3d 774, 782 (Mo. banc 2016). Accordingly, it is necessary to ascertain where the employer's non-delegable duty ends and a co-employee's independent duty begins. Abbott v. Bolton , 500 S.W.3d 288, 292 (Mo. App. E.D. 2016).
The principal opinion fails to distinguish several cases Appellant relies on to analogize Co-employees' actions to those finding co-employees and supervisors owed the injured employee a personal duty of care. In each of those cases, the co-employee or supervisor engaged in conduct that created a hazardous condition, or transitory risk, beyond the employer's nondelegable duty to provide a safe workplace, resulting in injury or death. Although these cases set forth affirmative acts and purposeful conduct consistent with the "something more" doctrine, in Peters this Court stated cases applying the "something more" test "can still prove instructive in a common law analysis" when determining a co-employee's duty, even though an injured employee is not required to allege affirmative, purposeful, or inherently dangerous conduct or conduct directed at the injured employee to establish co-employee liability in cases in which the common law applies. Peters , 489 S.W.3d at 797-98. Conner v. Ogletree , --- S.W.3d ----, 2018 WL 1163870 (Mo. banc 2018) (No. SC95955, decided Mar. 6, 2018), continues to recognize the usefulness of these cases.
In Tauchert v. Boatmen's National Bank of St. Louis , 849 S.W.2d 573, 574 (Mo. banc 1993), the supervisor personally created a makeshift hoist system to raise an elevator he and the employee were inspecting. The hoist failed, causing the employee to fall and sustain injuries. Id. This Court reversed the grant of summary judgment in employer's favor, holding there was a recognized cause of action against a co-employee for negligence when the co-employee created a hazardous condition that was "not merely a breach of an employer's duty to provide a safe place to work." Id.
In Hedglin v. Stahl Specialty Co. , 903 S.W.2d 922 (Mo. App. W.D. 1995), a supervisor directed an employee to climb to the top of a vat of scalding water and hang from a forklift to remove a grate inside the vat. Id. at 927. While the supervisor operated *559 the forklift, the employee fell into the vat of scalding water and died. Id. Finding this case akin to Tauchert , the court agreed with the plaintiff's assertion that the supervisor, "contrary to his obligation to assure [the employee] a safe workplace, personally arranged an extremely dangerous scheme to remove a screen or grate from the vat by hanging [the employee] from a forklift." Id.
In Pavia v. Childs , 951 S.W.2d 700 (Mo. App. S.D. 1997), a supervisor directed a grocery store employee to stand on a wooden pallet, which the supervisor then lifted approximately fifteen feet into the air so the employee could retrieve store items stacked in the store's warehouse area. Id. at 701. The employee fell and sustained serious injuries. Id. The court, citing Tauchert and Hedglin , held the employee could maintain a cause of action against his supervisor because the employee demonstrated the supervisor's negligent act created a hazardous condition beyond the employer's responsibility to provide a safe workplace. Id. at 702.
Finally, in Burns v. Smith , 214 S.W.3d 335 (Mo. banc 2007), this Court affirmed a trial court's judgment holding a supervisor personally liable for injuries an employee sustained when a water pressure tank on the side of a concrete truck exploded after the supervisor directed the employee to "[r]un it till it blows." Id. at 336. Burns explained an affirmatively negligent act "can best be described as an affirmative act that creates additional danger beyond that normally faced in the job-specific work environment." Id. at 338.
McComb's job as a courier inherently carried a general risk of accident or injury, no matter the weather conditions. Moreover, when McComb delivered or picked up life-saving medical supplies, organs, or other "STAT" items, driving in inclement weather was required as a part of his job description. McComb's job description required him to deliver "STAT" items immediately and to remove "snow/frost from both [courier] vehicles for STAT runs in winter months." In those instances, Co-employees' directive to navigate the winter storm would not have breached a duty owed by Co-employees separate and distinct from the employer's duty to provide a safe workplace. Yet these are not the facts presented here.
When viewing the facts in the light most favorable to Appellant, it is clear McComb was not delivering a "STAT" item when Norfus asked Cheese if he could pull McComb off his route after McComb reported his visibility was impaired. I would find Cheese's act of sending McComb out to drive his route and failure to pull McComb from the route was a transitory risk created by Co-employees' negligence in carrying out the details of the work beyond the employer's nondelegable duty to provide a safe workplace as found in Tauchert and its progeny. The winter weather conditions were so severe that not only did the governor issue a state of emergency, but Norfus also called Cheese prior to McComb's shift to discuss whether McComb should be sent out on his route at all. Cheese did not check the weather forecast, failed to consult with anyone, and did not even deign to look out his office window before directing McComb to drive his route. Cheese knew it would take several hours to complete his route and McComb would be driving the route by himself in the dark.
When Norfus spoke with McComb later that evening, McComb told Norfus his windshield was freezing. A reasonable inference from McComb's disclosure strongly suggested the freezing windshield impacted his visibility while driving through the winter storm in the dark. Norfus again called Cheese and requested permission to pull McComb from his route. Cheese declined, *560 although he could have pulled McComb from his route, and he knew McComb's job duties did not require him to perform deliveries of nonlife-saving or non-STAT items in severe winter weather when a state of emergency had been issued. Tragically, Cheese's directive to Norfus to instruct McComb to continue driving during a severe winter storm, knowing McComb's visibility was impaired due to the storm, a freezing windshield, and darkness, was a transitory risk, which, resulted in McComb's death, just as occurred in Tauchert and the other cases.
I also disagree with the principal opinion's proposition the duty allegedly breached in this case is similar to the one allegedly breached in Parr . In Parr , the employee, who had a myriad of medical conditions, was involved in a fatal single-vehicle accident in the course of his employment. Parr , 489 S.W.3d at 777. The employee's family filed a wrongful death action against three co-employees, alleging they had a duty to provide a safe working environment, to monitor the employee's health to determine if he was fit to drive, and to determine whether the employee was in compliance with federal regulations. Id. This Court held these allegations failed to establish the co-employees owed the employee a duty separate and distinct from the employer's nondelegable duty to provide a safe workplace. Id. at 782. Parr is distinguishable and the principle opinion's reliance on it is misplaced because Parr did not reach the issue of transitory risk, which squarely is at issue here.
Appellant established Co-employees' directive that McComb continue his route in the face of severe inclement weather and reduced visibility due to the darkness and an icy windshield created a transitory risk in negligently carrying out the details of the work, resulting in a breach of duty beyond the employer's nondelegable duty to provide a safe workplace. I would reverse the circuit court's grant of summary judgment in Co-employees' favor and remand for further proceedings.